[No. G036152. Fourth Dist., Div. Three. Feb. 28, 2007.]

FRANKLIN CAPITAL CORPORATION, Plaintiff and Appellant, v. DOUGLAS WILSON et al., Defendants and Respondents.

188

## Counsel

Brewer & Brewer, Templeton Briggs and James R. Knoles for Plaintiff and Appellant.

Steinberg, Nutter & Brent and Paul M. Brent for Defendants and Respondents.

## OPINION

### SILLS, P. J.—

### I. INTRODUCTION

After the attorney for plaintiff failed to appear for a mandatory settlement conference, the trial court set an order to show cause hearing (OSC) in regard to dismissal or other sanctions. The day before that hearing, plaintiff voluntarily dismissed its case without prejudice pursuant to section 581, subdivision (b)(1) of the Code of Civil Procedure. Nevertheless, the court held the hearing, at which it vacated the voluntary dismissal without prejudice and entered, in its stead, a new dismissal, by the court, with prejudice. This appeal is from the order denying plaintiff's latter motion to vacate the new dismissal with prejudice.

We must reverse. By its terms, section 581, subdivision (b)(1) confers on plaintiffs the right to dismiss anytime prior to the "commencement of trial." As we explain below, a mandatory settlement conference, or an ensuing OSC regarding dismissal or other sanctions for failure to appear at that mandatory settlement conference, does not in any way implicate the "commencement of trial." Plaintiff had the statutory right to dismiss its case without prejudice, even on the eve of the hearing.

Also, even if plaintiff did not have the right to dismiss without prejudice, it is clear that the trial court had no right to dismiss the case with prejudice on its own. As we explain below, the dismissal for failure to attend the mandatory case management conference was essentially a dismissal for failure to prosecute, and the statute and Supreme Court authority make clear that a dismissal for failure to prosecute is without prejudice.

### II. FACTS

In November of 2003, Franklin Capital Corporation (Franklin) filed this garden-variety debt collection action against defendant Douglas Wilson (a complaint for breach of contract regarding default on an outstanding loan balance of some $57,000), but by the spring of 2004 counsel for Franklin must have been preoccupied with other things, because he basically went inert as far as Franklin's case was concerned.[1]

---

[1] Should we name Franklin's counsel? As the next paragraph shows, the record doesn't make him look good, and his malfeasance (or, at the least, inaction) no doubt has cost the trial court and opposing counsel time, and therefore money. We feel the trial judge's irritation. On the other hand, this is not a case, such as might happen on a motion strictly for sanctions against an attorney, a bar disciplinary proceeding, or a classic Code of Civil Procedure section 473 set aside

To be precise: On March 2, 2004, counsel for Franklin failed to appear at a case management conference. That order was vacated (errant mail service), but counsel had a relapse of his aversion to case management conferences on April 13, prompting the court to issue an OSC contemplating dismissal. Counsel failed to appear at the OSC (this particular OSC was *not* the OSC that would prompt this appeal), and in fact the case was dismissed. Franklin's counsel managed to have the dismissal set aside in September, albeit with a $900 sanction. Then Franklin actually moved for summary judgment, but, true to form, failed to show up at the hearing on his motion, so it was denied.

In late April defendant Wilson filed a motion to dismiss for delay in prosecution, essentially relying on what litigators used to call the "two-year rule" (compare Code Civ. Proc., § 583.410 [discretionary authority to dismiss for delay in prosecution] with *id.*, § 583.420, subd. (a)(2)(B) [no authority to dismiss for delay in prosecution prior to two years having gone by from filing without the case having been brought to trial]) arguing that, under factors set out in rule 373 (now rule 3.1342) of the California Rules of Court, discretionary dismissal was appropriate.[2]

On May 6, 2005, counsel for Franklin failed to appear at a mandatory settlement conference—ironically, one requested by Franklin—and that day the trial court once again issued an OSC regarding "Dismissal and/or sanctions," setting the hearing for May 19.

The minute order did *not* mention any authority on which the trial court's OSC would proceed. However, two days before the hearing, defendant Wilson's attorney filed a "declaration" in support of "dismissal of action"

---

motion, where we have something approaching a complete picture of all the circumstances of an attorney's apparent inaction. Nor are we dealing with some scheme on the part of an attorney that necessarily suggests unethical behavior. Perhaps, if we knew all the facts, there might even be something *excusable* in trial counsel's conduct. It is becoming to the judiciary for judges to recall in such contexts the difficult exigencies of day-to-day law practice. If perfection were the standard none of us should escape ridicule. (See *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 791, fn. 3 [176 Cal.Rptr. 104, 632 P.2d 217] *(Wells)* (dis. opn. of Carr, J.) ["I do not mean to condone procrastination and slothfulness on the part of attorneys, but as a former practicing attorney, I am aware of the problems of inept personnel who fail to calendar or miscalendar deadlines and the burden of determining priorities in the workload of a busy attorney."].) We will therefore not name Franklin's trial counsel, and readers should draw no adverse inferences as regards counsel who now represent Franklin on appeal.

[2] All otherwise undesignated statutory references in this opinion will be to the Code of Civil Procedure, with the exception of any reference to "section 1717," which will be to the Civil Code. All otherwise undesignated references to any rule will be to the California Rules of Court.

which incorporated the late April motion to dismiss under section 583.410 (lack of prosecution after two years have passed since filing without case having been brought to trial).

The day before the hearing, May 18, Franklin's counsel filed a voluntary dismissal without prejudice with the court clerk.

Counsel didn't show up at the hearing the next day, so the court ordered a dismissal *with* prejudice. While the court, in its minute order, cited no statutory or case authority for its action, it indicated that the dismissal was for lack of prosecution, though it also alluded to counsel's failure to comply with the previous order to pay sanctions of $900.[3] The court entered an unsigned minute order of dismissal with prejudice on May 19 (as distinct from a signed final order of dismissal under section § 581, subd. (d) [all dismissals must be in writing signed by the court]).

In late August, after an aborted attempt to file a new action in July,[4] Franklin filed a motion to vacate the dismissal on the grounds of lack of jurisdiction for the trial court to do what it did on May 19. That motion was denied in a hearing on September 23. While the trial court again did not mention any specific statutory or case authority for its decision, it clearly alluded to a body of case law, which we discuss in detail below, which the trial court read as precluding voluntary dismissals in the face of any "dispositive" action.[5] The denial of the motion to vacate was filed September 26, and the October 3 notice of appeal is timely.[6]

---

[3] Here is the relevant text from the reporter's transcript of that day: "The court: Okay. There is a dismissal without prejudice that was filed on May 18th by counsel for the plaintiff. That dismissal without prejudice is rejected. The court's dismissing it with prejudice. [¶] The court's taking that action based upon the numerous failures to appear, failure to comply with court orders pursuant to sanctions, and, again, the numerous failures to appear that have occurred previously."

[4] Which is not part of our record, and respondents have not made a motion to augment. As explained in respondent's brief, the new action was withdrawn after Franklin was threatened with abuse of process or malicious prosecution. This opinion, of course, does not address whatever complications may arise in the future from that aborted foray.

[5] Here is the part of the reporter's transcript where the court explains its action: "You can't file a dismissal when there is a pending dispositive action down the road to escape that dispositive action. That would be like, okay, we have a summary judgment on calendar, so I'm just going to dismiss this. Or there is a motion, there is a motion to dismiss. Well, to avoid any negative ruling, I'll just dismiss it now. You can do that up until the point where the motion is actually pending."

[6] This case presents one of those zen-like conundrums in civil procedure where the court must first peek at the merits in order to ascertain the procedural propriety of some question—in this case, appealability. As we explain below, when Franklin filed its May 18 voluntary dismissal without prejudice, the trial court was stripped of jurisdiction to take any further action. (E.g., *Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 542 [33 Cal.Rptr.3d

## III. DISCUSSION

### A. Did the Pending Court-initiated OSC to Dismiss or Impose Other Sanctions Because of the Failure to Attend the Mandatory Settlement Conference Cut Off Plaintiff's Right to Dismiss Voluntarily? No.

#### 1. *The Statute Controls*

While the case law (which we discuss in detail below) is extensive, we must remember that the right of a plaintiff to dismiss its case voluntarily and without prejudice is set forth in a statute, and all permutations of circumstances on the subject flow from that statute. The statute is section 581, subdivision (b)(1), which provides: "An action may be dismissed in any of the following instances: [¶] (1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at *any time before the actual commencement of trial,* upon payment of the costs, if any." (Italics added.) In essence, then, all cases which deal with voluntary dismissals are glosses on the words, "commencement of trial."

In terms of the case before us, it would seem obvious that a mandatory settlement conference is not the "commencement of trial" in any sense of the phrase. By definition no adjudication is contemplated at a settlement conference. And it would seem likewise obvious that an ensuing OSC regarding dismissal or sanctions for failure to appear at such a conference would not implicate the idea of "commencement of trial." Again, nothing like adjudication of the merits happens at an OSC conducted in the wake of a failure to appear at a mandatory settlement conference.

We should also mention at this point that the statute also contains a definition of what constitutes a trial. The definition is found in subdivision

761] (*Tire Distributors*) ["When a dismissal has properly been filed, the trial court loses jurisdiction to act in the case."].) When the trial court entered, on its own, a dismissal with prejudice the next day, the trial court exceeded its jurisdictional authority in a way that the issue could be raised at any time. (See *People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) Technically speaking, then, the September 26 order denying the motion to set aside was a postjudgment order (the judgment being the May 18 voluntary dismissal, not the May 19 minute order), and the order denying the set aside request was an appealable postjudgment order, from which *this* appeal, noticed within two weeks of that postjudgment order, was easily timely. (See also *Reid v. Balter* (1993) 14 Cal.App.4th 1186, 1194 [18 Cal.Rptr.2d 287] ["Courts also possess inherent power to set aside void judgments."].)

(a)(6) of section 581. It reads: "(a) As used in this section: [¶] . . . [¶] (6) 'Trial.' A trial shall be deemed to actually commence at the beginning of the opening statement or argument of any party or his or her counsel, or if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence."

If section 581, subdivision (a)(6) set forth the *exclusive* criteria for the concept of "commencement of trial" we might end this opinion right here. Quite obviously an OSC regarding failure to appear at a mandatory settlement conference does not fit any of the three specified acts for determining whether trial has actually commenced.

■ On its face, however, the language in section 581, subdivision (a)(6) is not exclusive—it tells you that some things constitute a trial but it doesn't say that those are the only things that constitute a trial—and in any event the issue of its exclusivity was dispositively settled against exclusivity by our Supreme Court in *Wells, supra,* 29 Cal.3d 781, 784–788. As the *Wells* case shows, the "trial shall be deemed" language had been added to the statute in 1947, though then the language was in the last sentence of subdivision 1 of section 581 (see Stats. 1947, ch. 990, § 1, p. 2256). The specific question in *Wells* was whether that language, as well as the addition of the word "commencement" as in "commencement of trial" set up "a new and exclusive test, preserving the right of voluntary dismissal until the occurrence of one of the specific acts deemed by subdivision 1 to constitute 'the actual commencement of trial' " such that a voluntary dismissal after a general demurrer had been sustained and the time to amend had expired might be valid. (*Wells, supra,* 29 Cal.3d at p. 786.) Answer: No. The court said the 1947 amendment with its "trial shall be deemed" language did not address the question of when "the trial of an issue of *law* commences." (See *id.* at pp. 787–788 ["Accordingly, we are unable to agree with plaintiff's contention that the 1947 amendment erased or diluted the *Goldtree* rationale. It is reasonable to conclude that the 1947 amendment to section 581, subdivision 1, did not address the issue before us, namely, when does the trial of an issue of *law* commence?" (Original italics.)].)

In the wake of *Wells,* a substantial and fairly complex body of case law has grown up involving when—and when not—a plaintiff's statutory right to dismiss pursuant to section 581, subdivision (b)(1) is cut off by the presence of some impending "dispositive" procedure. Indeed, defendant Wilson in this case urges us to affirm the trial court's refusal to vacate its dismissal with prejudice precisely because of the voluntary dismissal while a "dispositive"

proceeding (the OCS regarding dismissal or sanctions) was pending. In order not to run afoul of this case law we are required to map its relevant boundaries.

## 2. The Supreme Court Cases

Despite the nonexclusivity of section 581, subdivision (a)(6), the basic right to voluntarily dismiss remains statutory, with the operative benchmark being the phrase "commencement of trial" in section 581, subdivision (b)(1). So we will begin at the beginning, with the first major Supreme Court case limiting the statutory right to dismiss, *Goldtree v. Spreckels* (1902) 135 Cal. 666 [67 P. 1091] (*Goldtree*). *Goldtree*, decided when the statute merely said "trial," was essentially a gloss on that word.

In *Goldtree*, the high court held that a voluntary dismissal without prejudice had no effect on two causes of action that had previously been the subject of a sustained demurrer without subsequent amendment. The court reasoned that the demurrer, challenging the sufficiency of the facts, went "directly to the determination of the rights of the parties," and that was to be " 'considered a trial.' " (*Goldtree, supra,* (1902) 135 Cal. at pp. 670–671.)

While most of the *Goldtree* opinion was an exposition on how the word "trial" as used in the statute encompasses the adjudicatory process of consideration of a demurrer (see *Goldtree, supra,* 135 Cal. at pp. 669–673), the court alluded to an argument rooted in judicial policy, by quoting a passage from *State v. Scott* (1888) 22 Neb. 628 [36 N.W. 121, 126], the gravamen of which was: There has to be an end to litigation. However—and this point will be important later on when we address some of the Court of Appeal decisions limiting the otherwise "absolute" right to dismiss—the high court did not stray from the benchmark of the word "trial" as used in the statute. The connection to the statutory word "trial" was made by linking the commonsense idea that litigation must end to the more technical idea that an *initial submission of the merits of the case* to the trial court terminates the right to dismiss because that submission *is* a "trial."[7]

---

[7] Here is the passage that the *Goldtree* court quoted from the *State v. Scott* decision: " 'No case has been cited where under a statute like ours a plaintiff as a matter of right can dismiss his action after it has been submitted to the court. If he could do so, litigation would become interminable, because a party who was led to suppose a decision would be adverse to him could prevent such decision and begin anew, thus subjecting the defendant to annoying and continuous litigation. The statute, therefore, limits the right of the plaintiff to dismiss to the final submission of the case.' " (*Goldtree, supra,* 135 Cal. at p. 671.)

The next major Supreme Court case addressing any limitations on the right to voluntarily dismiss without prejudice was the *Wells* case, which we have already discussed as regards its dealing with the 1947 amendments to the dismissal statute, both adding the "commencement of" phrase and the "shall be deemed" language.

In *Wells*, there was a demurrer to the plaintiff's second amended complaint, the plaintiff was given leave to amend but didn't. The defendant then filed a motion to dismiss the case with prejudice, and the plaintiff then quickly filed a request for dismissal of the action without prejudice. The trial court granted the motion for dismissal with prejudice, then reversed itself and granted the plaintiff's motion to set aside the dismissal with prejudice. There was an appeal by the defendant from the last order, and the high court reversed, holding that the case should have been dismissed *with* prejudice. (See *Wells, supra*, 29 Cal.3d at pp. 784–789.) The court noted that the defendant was entitled to an appealable judgment *with prejudice* if its demurrer was successful. (See *id.* at p. 785.)[8]

The thrust of the *Wells* opinion is (in addition to the demonstration that the "shall be deemed language" was not exclusive) a demonstration that, as between (1) the apparently "absolute" right to dismiss without prejudice afforded by the controlling statute (and it was the *Wells* opinion that first put the word "absolute" in quotes), and (2) the countervailing *statutory* right of a defendant to obtain a dismissal with prejudice after a court has sustained a demurrer with leave to amend and there has been no amendment, the latter takes precedence. The alternative—a truly "absolute" right to dismiss even after a demurrer had been sustained without the possibility of cure by amendment—made "neither good sense nor good law." (*Wells, supra*, 29 Cal.3d at p. 788.) Despite (or consonant with) the fact that the *Wells* court held that the "shall be deemed" language was nonexclusive, the focus of the *Wells* court was still on the statutory word "trial." (See *id.* at pp. 785–788 [demonstrating that two appellate decisions[9] did not undermine the *Goldtree* definition of trial, despite the 1947 amendment changing "trial" to "commencement of trial"].)

---

[8] Said the court: "On the other hand, the power of a court to dismiss an action upon motion of either party under the circumstances set forth in subdivision 3 [of section 581, involving demurrers when the time to amend has expired and either party moves for dismissal] seems equally clear. [Citation.] As with subdivision 1 dismissals, the statutory language is not specific but it is generally accepted that the movant is entitled to an appealable judgment of dismissal 'with prejudice' [citation], as defendants requested in this case." (*Wells, supra*, 29 Cal.3d at p. 785.)

[9] *United Shippers, Inc. v. Superior Court* (1980) 104 Cal.App.3d 359 [162 Cal.Rptr. 871] and *Parenti v. Lifeline Blood Bank* (1975) 49 Cal.App.3d 331 [122 Cal.Rptr. 709].

A final Supreme Court case that (judging from subsequent appellate decisions) has not received perhaps quite as much attention as *Wells* is *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778 [191 Cal.Rptr. 8, 661 P.2d 1088] (*Christensen*). The result in *Christensen* cut in the opposite direction of *Goldtree* and *Wells*, holding that the dismissal there *was* an effective dismissal.

Read alongside *Wells*, *Christensen* provides a relatively complete picture of our Supreme Court's essential approach to the subject: Statutory language still controls. That is, courts must look to when "trial"—granted, "trial" including trials of issues of law—begins.

*Christensen* arose out of an anomalous strategy (the court's word was "strange," see *Christensen, supra*, 33 Cal.3d at p. 781) by a plaintiff to compel arbitration of a construction dispute by filing a complaint, as distinct from a straightforward petition to compel arbitration. The idea was to obtain the kind of discovery from the defendants of their defenses and position that would not normally be available to a litigant in straight arbitration. (See *ibid.*) The "novel strategy backfired," however, when the defendants filed a demurrer, and things became "still worse" for the plaintiffs when the trial court sustained the demurrer to all causes of action save one, and that one was struck on the court's own motion. (*Ibid.*) The plaintiffs then filed a "trimmed-down" amended complaint still asserting that the dispute should be arbitrated and the defendants demurrered again, arguing that the plaintiffs had been too clever by half. The defendants asserted that the plaintiffs had waived their right to insist on arbitration. So, one day before the hearing on this second demurrer, the plaintiffs dismissed their complaint without prejudice. (The defendants did not go through with the hearing on their demurrer.)

Two months later, the plaintiffs filed a petition to compel arbitration. The trial court reasoned that the "bad faith" of the plaintiffs having the ulterior motive of obtaining (otherwise unavailable) discovery effectively waived the right to arbitrate. (*Christensen, supra*, 33 Cal.3d at p. 781.) For their part, the defendants moved to vacate the earlier, nonprejudicial dismissal by the plaintiffs and enter a new dismissal *with* prejudice. The trial court denied *that* motion. Both sides appealed, and the case was eventually taken by the Supreme Court.

The first part of the opinion showed that the trial court's conclusion as to the waiver issue was correct—the plaintiffs' "procedural gamesmanship" showed that the action indeed had been filed in bad faith and "by doing so" they had waived their right to arbitrate. (See *Christensen, supra*, 33 Cal.3d at pp. 783–784.)

But there was still the question of whether the plaintiffs had "properly dismissed their complaint without prejudice." (*Christensen, supra,* 33 Cal.3d at p. 784.) Moving in for the kill, the defendants asserted that the trial court incorrectly denied their motion to vacate the earlier nonprejudicial dismissal order and substitute a new dismissal with prejudice—a result that, as the *Christensen* court observed, would leave the plaintiffs "without any remedy whatsoever." (*Ibid.*)

Resolution of the issue centered on an often-quoted[10] passage from *Wells,* which we include (as quoted by *Christensen*) in the margin.[11] *Christensen* rejected an interpretation proffered by the defendants that the sustained demurrer to the original complaint locked in a result adverse to the plaintiff, so that after a "demurrer to a new, amended complaint is filed, as here, plaintiff can no longer voluntarily dismiss." (*Christensen, supra,* 33 Cal.3d at p. 785.)[12] For the *Christensen* court, the absence of an actual *ruling* on the still viable amended complaint was dispositive. In effect, the *Christensen* court elevated what it called an *intimation* from *Wells* about the freedom to dismiss prior to a "decision" into a straight proposition of law.[13] The

---

[10] See Weil et al., California Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) paragraph 11:25, page 11-11 (hereinafter Rutter Guide Civil Procedure Before Trial) (quoting passage and observing that "The meaning and effect of this dictum is unclear").

[11] " 'We conclude, therefore, that once a general demurrer is sustained with leave to amend and plaintiff does not so amend within the time authorized by the court or otherwise extended by stipulation or appropriate order, he can no longer voluntarily dismiss his action pursuant to . . . section 581, subdivision 1, even if the trial court has yet to enter a judgment of dismissal on the sustained demurrer. (Anticipating another possible source of procedural confusion [citation], we note that such right of voluntary dismissal, which is not barred until expiration of plaintiff's time to amend after the sustaining of the demurrer, would also not be impaired *prior* to a decision sustaining the demurrer.' " (*Christensen, supra,* 33 Cal.3d at p. 785, quoting *Wells, supra,* 29 Cal.3d at pp. 789–790.)

[12] In *Parsons v. Umansky* (1994) 28 Cal.App.4th 867 [34 Cal.Rptr.2d 144] (*Parsons*), a voluntary dismissal after a general demurrer had been sustained but *within* the time given to amend was held valid; the appellate court determined that the trial court erred in vacating the voluntary dismissal without prejudice and entering a new one with prejudice. *Parsons* derived its rule from the negative implications of *Goldtree* and *Wells,* i.e., if you can't dismiss after time to amend has expired, you can dismiss before, but *Parsons* did not mention *Christensen* though both cases would appear to derive from the same basic idea: If your complaint still *might* be viable because you can still amend it after a sustained demurrer, you can still voluntarily dismiss.

[13] Readers should note the emphasis on actual rulings and decisions in this passage from *Christensen,* which we stress by italicizing those words: "We do not agree with this interpretation of *Wells.* Before a *ruling* on the amended complaint, it cannot be said that there has been a '*decision* sustaining the demurrer.' (*Wells, supra,* 29 Cal.3d at p. 790.) It follows that, as *Wells* intimates, plaintiffs had the right to dismiss the complaint without prejudice before *any decision* on the demurrer to the first amended complaint. The first amended complaint had replaced the original complaint, and until a demurrer to that amended complaint had *been sustained,* there was no *decision* sustaining the demurrer." (*Christensen, supra,* 33 Cal.3d at p. 785, italics added and omitted.)

plaintiffs in *Christensen* had the "the right to dismiss" before "any decision" on the amended complaint. (33 Cal.3d at p. 785.)

### 3. *Consistent Appellate Decisions*

In the wake of *Wells*, a number of appellate decisions have applied the *Goldtree-Wells* approach to "trial" to voluntary dismissals in the shadow of impending demurrers or summary judgment motions even though there was no actual ruling or decision on the impending motion. (The word "shadow" is ours; at this point in the opinion we deliberately use an imprecise metaphor.) What there was, however, in each of these cases, was some objective indicia, e.g., by way of publicly announced tentative ruling or a failure to file opposition by the deadline, that the plaintiff's case was inherently defective on the merits. In short, *as a matter of law*, the case was a loser: See *Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765 [57 Cal.Rptr.2d 4] (*Mary Morgan*) (plaintiff not permitted to dismiss without prejudice where adverse tentative summary judgment ruling had been announced and the hearing had been continued to allow plaintiff opportunity to obtain evidence to defeat motion); *Cravens v. State Bd. of Equalization* (1997) 52 Cal.App.4th 253 [60 Cal.Rptr.2d 436] (*Cravens*) (plaintiff not permitted to dismiss one day prior to hearing on summary judgment motion where plaintiff had failed to file any opposition to summary judgment motion); and *Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60 [118 Cal.Rptr.2d 405] (*Groth Bros.*) (no voluntary dismissal without prejudice where trial court had announced a tentative ruling to sustain a demurrer without leave to amend).

On the other hand, a number of cases going in the opposite direction rested on the point that the voluntary dismissal could not be construed as a concession, implicit or otherwise, that the case lacked substantive merit as a matter of law: *Mossanen v. Monfared* (2000) 77 Cal.App.4th 1402, 1410 [92 Cal.Rptr.2d 459] (where trial court allowed attorney for plaintiff guardian ad litem to withdraw from medical malpractice action, dismissal by guardian ad litem in the face of summary judgment motion filed by defendants was proper because guardian ad litem had no other "means to resist the motion"; court also noted that summary judgment motion was substantively defensible because new counsel "would have been in a position to assert triable issues of material fact"); *Zapanta v. Universal Care, Inc.* (2003) 107 Cal.App.4th 1167, 1173–1174 [132 Cal.Rptr.2d 842] (*Zapanta*) (dismissal one day prior to the day opposition to summary judgment motion was *due* was effective because case had not yet reached stage where disposition was "mere formality"); and *Tire Distributors, supra*, 132 Cal.App.4th 538 (dismissal of particular defendant one day before

continued hearing date of that defendant's summary judgment motion was effective because of evidence that the plaintiff believed it had already settled out with that defendant).

### 4. Can the Appellate Decisions Be Harmonized? Yes. (Well, Mostly Yes.)

#### a. The "Mere Formality" Test As a Way to Ascertain the "Commencement of Trial"

█ The cases we have reviewed so far suggest this test as the accepted judicial gloss on the voluntary dismissal statute:

When the dismissal could be said to have been taken

—(a) in the light of a public and formal indication by the trial court of the legal merits of the case, or

—(b) in the light of some procedural dereliction by the dismissing plaintiff that made dismissal otherwise *inevitable*, then the voluntary dismissal is ineffective.

This two-part test readily harmonizes the results in the Court of Appeal's decisions in *Mary Morgan*, *Cravens*, *Groth Bros.*, *Mossanen*, *Zapanta* and *Tire Distributors*.

In the three cases of the six just mentioned where the dismissal had been held to be ineffective, either the trial court had already *publicly* indicated that the impending motion would result in a substantive dismissal of the action (*Mary Morgan* and *Groth Bros.*), or the plaintiff was in a position to deduce that there was nothing to be done to prevent the substantive dismissal of the action—the dice had already been thrown (*Cravens*).

In the other three cases where the dismissal was effective, there was

—(a) no reason at all to believe that the case was inherently a loser as a matter of law (*Mossanen*, where the court in fact pointed out that the case would have survived a summary judgment motion in the hands of a competent attorney), or

—(b) affirmative reason to believe that the case had at least enough merit to warrant settlement (*Tire Distributors*), or

—(c) a complete absence of any reason to conclude that an adverse result on an impending motion was a foregone conclusion (*Zapanta*).

Our distilled test is also consistent with the three Supreme Court cases we have already examined as well: In *Goldtree* and *Wells* there was the truly "formal" indication of actual decisions on pending demurrers on the substantive merits. By contrast in *Christensen* there was no formal indication by the trial court on the merits as to the pending demurrer on the amended complaint.

A test of *formal* indication by the court, or the legal inevitability of dismissal based on dispositive procedural inaction by the plaintiff (like not filing opposition to a summary judgment motion or not bringing the case to trial in five years) also harmonizes almost all the rest of the appellate cases that have dealt with the issue:

It explains *Kyle v. Carmon* (1999) 71 Cal.App.4th 901 [84 Cal.Rptr.2d 303], where an effective dismissal occurred after an apparently contested hearing on an anti-SLAPP (strategic lawsuit against public participation) motion but while the matter was under submission to the trial court.

It explains *M & R Properties v. Thomson* (1992) 11 Cal.App.4th 899 [14 Cal.Rptr.2d 579] (*M & R*), where a dismissal was not effective given that the plaintiff had not brought the case to trial in five years, where the defendant had filed a dismissal motion on that basis, and where a tentative ruling had even become the actual ruling of the court prior to dismissal.

The test even reconciles *Datner v. Mann Theatres Corp.* (1983) 145 Cal.App.3d 768 [193 Cal.Rptr. 676] to *Groth Bros.*, though the two cases are sometimes perceived to be in conflict as to whether a plaintiff can dismiss "even after learning of an adverse tentative ruling." (See Rutter Guide Civil Procedure Before Trial, *supra*, ¶¶ 11:25.2 to 11:25.3, p. 11-12 [noting policy rationales support *Groth Bros.* position].) In *Datner*, there was a dismissal one day prior to a hearing on an apparently contested demurrer, based on a statement by the judge in an *unreported chambers conference* that the demurrer was meritorious. *Datner* is, in fact, like *Kyle*, where the plaintiff might have subjectively picked up on signals from the trial judge in oral argument that the case would be lost, but there had been no formal indication, by the court, to that effect. The *Datner* court had not yet gone "public" with a tentative ruling. By contrast, in *Groth Bros.* there was a formally posted tentative for the world to see.

The test we have derived from these cases is basically the one proposed by the *Zapanta* court, which employed the more elegant shorthand, "mere

formality," (see *Zapanta, supra*, 107 Cal.App.4th at pp. 1173–1174) though perhaps a slight qualification is necessary as regards the tentative ruling cases, *Groth Bros.* and *Mary Morgan*. It is stretching things a wee bit to say that a trial court's *tentative* ruling means that an adverse judgment is a "mere formality" which must *inevitably* ensue: Such a reading of tentative rulings suggests a rather excessive confidence in the infallibility of judges and an unseemly despair over the possibilities that oral argument might change things. (See *Moles v. Regents of University of California* (1982) 32 Cal.3d 867, 874 [187 Cal.Rptr. 557, 654 P.2d 740] [one different judge hearing appellate court oral argument might have made a difference in the outcome].)

That said, if we qualify *Zapanta*'s "mere formality" test to extend it to *public and formal* judicial expressions of the merits of a case in the context of a substantively dispositive proceeding—and we stress that any test to be faithful to the Supreme Court cases must retain a link to the idea of "trial" as exposited in *Goldtree*, *Wells*, and *Christensen*—it is remarkable how consistent the cases are in this area.

### b. A Compendium of the Cases

Let's see how the *Zapanta* "mere formality" test works when we apply it to a wider range of cases. With the explosive growth of case precedent, of course, the ability to exhaust the applicable legal authorities is becoming more difficult with each passing day. That said, here is a reasonably complete compendium of California case law to date (February 2007) on the issue of precisely when an impending motion of some kind cuts off a plaintiff's statutory right to voluntarily dismiss a case without prejudice:

#### i. *where right to dismiss was cut off*:

*Goldtree, supra*, 135 Cal. 666—dismissal after demurrers to certain causes of action were long sustained and time to amend had long run.

*London v. Morrison* (1950) 99 Cal.App.2d 876 [222 P.2d 941]—dismissal after one year had expired since case was ordered transferred and transfer fees had not been paid, precluding trial court, under statute, from taking any other action than dismissal.

*Wells, supra*, 29 Cal.3d 781—dismissal after demurrer to second amended complaint sustained and time to amend had run and specifically one day before motion to dismiss with prejudice.

*Herbert Hawkins Realtors, Inc. v. Milheiser* (1983) 140 Cal.App.3d 334 [189 Cal.Rptr. 450] (*Herbert Hawkins*)—dismissal after adverse result in judicial arbitration and after the plaintiff requested trial de novo.

*Miller v. Marina Mercy Hospital* (1984) 157 Cal.App.3d 765 [204 Cal.Rptr. 62] (*Miller*)—dismissal one week prior to hearing on summary judgment motion based on failure to respond to dispositive admissions, later deemed admitted.

*Mary Morgan, supra*, 49 Cal.App.4th 765—dismissal after adverse tentative summary judgment ruling had been announced, but during interim discovery period prior to actual ruling.

*Gray v. Superior Court* (1997) 52 Cal.App.4th 165 [60 Cal.Rptr.2d 428]—dismissal 15 days after referee transmitted written recommendation to trial court in wake of two-day evidentiary hearing.

*Cravens, supra*, 52 Cal.App.4th 253—dismissal one day prior to hearing on summary judgment motion, but after time for the plaintiffs to file opposition had run.

*Groth Bros., supra*, 97 Cal.App.4th 60—dismissal after tentative ruling on demurrer had been announced, and tentative was not to allow any leave to amend.

*M & R, supra*, 11 Cal.App.4th 899—dismissal in the wake of five-year motion and after tentative ruling had become the actual ruling of the court.

*Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168, 172 [49 Cal.Rptr.2d 562] (*Hartbrodt*)—dismissal "just prior" to hearing on discovery motion for terminating sanctions, after the plaintiff had failed to comply with previously litigated discovery order; opinion implies that the plaintiff did not file opposition to the terminating sanction motion, and makes no reference to the announcement of any tentative ruling.

ii. *where right to dismiss was not cut off:*

*Christensen, supra*, 33 Cal.3d 778—dismissal one day before hearing to second demurrer (on first amended complaint); opinion makes no reference to any announced tentative ruling.

*Datner v. Mann Theatres Corp., supra*, 145 Cal.App.3d 768—dismissal day before hearing on demurrer based on statement by judge in unreported chambers conference that the demurrer was meritorious.

*Cal-Vada Aircraft, Inc. v. Superior Court* (1986) 179 Cal.App.3d 435 [224 Cal.Rptr. 809]—dismissal after summary adjudication of some, but not all, issues.

*Harris v. Billings* (1993) 16 Cal.App.4th 1396 [20 Cal.Rptr.2d 718]—dismissal pursuant to settlement of case, but the plaintiff forgot that under fast track rules she had to give notice of settlement to the court; local rules requiring such notice did not vitiate right to dismiss.

*Parsons v. Umansky, supra,* 28 Cal.App.4th 867—dismissal after general demurrer sustained with leave to amend and during period in which complaint could be amended.

*Kyle v. Carmon, supra,* 71 Cal.App.4th 901—dismissal *after* anti-SLAPP suit motion heard by trial court, but while matter was under submission.

*Mossanen v. Monfared, supra,* 77 Cal.App.4th 1402—dismissal upon receipt of summary judgment motion and just after litigant found herself without counsel who could have asserted meritorious defenses to motion.

*Zapanta, supra,* 107 Cal.App.4th 1167—dismissal while summary judgment pending but one day before opposition to summary judgment motion due.

*Tire Distributors, supra,* 132 Cal.App.4th 538—dismissal one day before summary judgment motion was to be heard was effective where the dismissing plaintiff had good faith belief that the defendant bringing summary judgment motion had already settled out of the case with the plaintiff.

The mere formality test, based on whether there has been a "publicly announced decision" or dismissal is a "procedural inevitability," explains all of these cases: *Goldtree* (dispositive decision on merits long prior announced); *London* (procedural failure to pay transfer fees by certain date doomed case[14]); *Wells* (failure to amend doomed case); *Herbert Hawkins* (merits already litigated in judicial arbitration); *Miller* (case was doomed when certain requests for admissions were allowed to be deemed admitted); *Mary Morgan* (adjudication of merits announced in adverse tentative summary judgment ruling); *Gray* (adjudication of merits in two-day evidentiary hearing by referee); *Cravens* (failure to file opposition to summary judgment motion doomed case); *Groth Bros.* (merits adjudicated in tentative ruling on demurrer and no possibility of cure by amendment); *M & R* (tentative ruling announced plus failure to bring to trial in five years doomed case); *Christensen* (no announced tentative on demurrer to still viable amended complaint); *Datner* (no official tentative on demurrer); *Cal-Vada* (some issues

---

[14] Since the particular statute at issue in *London* (former § 581, subd. (b)) was jurisdictional, depriving the court of all jurisdiction to take any action, including entering of voluntary dismissal, it is like a five-year case, where similar inaction puts the case on an irreversible track to dismissal.

still viable even after summary adjudication); *Harris* (garden-variety dismissal after settlement with no tentative and case still viable); *Parsons* (leave to amend meant case was still viable); *Kyle* (no announced tentative, case still theoretically viable because under submission); *Mossanen* (no announced decision of any kind and dismissal while case still viable); *Zapanta* (no announced decision and dismissal while case still theoretically viable); *Tire Distributors* (no announced decision and settlement showed that case had viability).

In fact, the test explains the result in every case in our list.

Except one.

### c. The One Case Not Explained by the "Mere Formality" Test

One case, however, clearly does not fit the mere formality rule, even with an emendation to allow for tentative (public and formal) rulings—*Hartbrodt, supra*, 42 Cal.App.4th 168. There, the plaintiff had disobeyed a discovery order to turn over certain audiotapes. The defendant filed a motion for discovery sanctions, which entailed the *possibility* of terminating sanctions. (We explain below that such discovery terminating sanctions are with prejudice and result in a judgment that is res judicata.) As far as the opinion discloses, there was no tentative ruling on the discovery sanction motion. Rather, "just prior" to the hearing, the plaintiff dismissed the case. (*Hartbrodt, supra*, 42 Cal.App.4th at p. 172.)

There are several reasons that *Hartbrodt* cannot be said to fit into the "mere formality" test that works so well with all the other cases. As just noted, there was no indicated public disposition of the case by the trial court. The opinion doesn't even make reference to the possibility that the trial judge or referee who had presided over earlier proceeding even growled at the plaintiff in one of the earlier hearings. (E.g., "A word to the wise, counsel: Stop fooling around and have your client produce that tape or you will soon find yourself standing in deep dismissal territory," or words to that effect.)

Second, unlike the cases where dismissals were taken in the face of procedurally based dispositions, such as *Miller, supra*, 157 Cal.App.3d 765 or *M & R, supra*, 11 Cal.App.4th 899, it could not be said that the procedural dismissal in *Hartbrodt* was inevitable. Procedural inevitability happens when dispositive admission requests have been made and a litigant has allowed them to be deemed admitted (*Miller*) or the plaintiff has blown the five-year deadline (*M & R*) requiring the trial court to dismiss. In such cases one can say that the ultimate dismissal is indeed a "mere formality" dictated by hard

rules of procedure, qualified perhaps by the idea that only some miracle (a change of heart by an adversary? some unknown estoppel or tolling that might apply?) can save the case, otherwise predestined to perdition.

A pending *discretionary* dismissal motion based on the plaintiff's procedural sins is something different. In that case dismissal is more like the joke about modern health-conscious Californians and death: Some people are so dour as to always believe that death is imminent, most people recognize that death is inevitable, but in California it is perceived as merely optional. The point is—in *Hartbrodt*, dismissal *really was* only optional. In the written opinion, at the point just prior to when the court tackled the issue of the voluntary 11th-hour dismissal, the court emphasized the fluidity of possible outcomes, not the inevitability. Hence the *Hartbrodt* court stated that the trial court's own choice of a terminating sanction was within its "wide discretion to order discovery and broad powers to enforce those orders" and that the choice of termination would "not be disturbed in the absence of an abuse of discretion." (*Hartbrodt, supra*, 42 Cal.App.4th at p. 175.) The implication is that if, in the trial court's discretion, the court had chosen some other way to enforce its discovery order short of termination (really large monetary sanctions? a tough evidentiary sanction?) that decision too would have been upheld as within the trial court's discretion. Unlike *Miller* or *M & R*, dismissal as a result of the plaintiff's procedural foul-up in *Hartbrodt* was not an inevitability.

The *Hartbrodt* court did not elaborate on what paradigm it used, except to describe and cite *M & R, supra*, 11 Cal.App.4th 899, and derive its conclusion from that case. The court's treatment of the whole issue did not extend for more than two paragraphs. (See *Hartbrodt, supra*, 42 Cal.App.4th at pp. 175–176.) As we have seen, though, *M & R* involved an impending dismissal motion based on the *mandatory* five-year rule. (Cf. § 583.360 ["shall"].) The impending five-year dismissal in *M & R* really was a mere formality or foregone conclusion—unlike a discretionary two-year dismissal for lack of prosecution, the court in *M & R* had no choice.

Perhaps the best expression of why the *Hartbrodt* court ruled as it did was its rejection of the perceived circumvention of consequences that are possible when dismissals are a matter of (absolute or not) right. The key language was: "In one last effort to salvage his case, appellant attempted to voluntarily dismiss his case without prejudice and thereby deny to respondents the finality obtained by imposition of the terminating sanction. This *tactic would simply defeat* the trial court's power to enforce its discovery orders." (*Hartbrodt, supra*, 42 Cal.App.4th at p. 175, italics added.)

The reference to "finality" merits comment. The *Hartbrodt* case left unsaid the fact that dismissals pursuant to terminating sanctions for discovery disobedience are *with* prejudice and res judicata. (See *Kahn v. Kahn* (1977) 68 Cal.App.3d 372 [137 Cal.Rptr. 332].) The point of the court's brief comments was obviously this: Having practically invited a discovery dismissal that would have res judicata effect, it was simply repugnant to the court's basic sense of justice that a *likely* (and that is reading a little between the lines) dismissal with prejudice could not be "defeat[ed]" by a cheap deathbed dismissal pursuant to section 581, subdivision (b)(1).

*Hartbrodt* thus would appear to be based on the essential equities of the situation rather than a precise ascertainment of when the statutory cutoff right ends. While we agree that looking to the equities is good judicial policy, we are mindful that any consideration of when the statutory right to voluntary dismissal terminates must be rationally connected to the statutory phrase "commencement of trial." We must therefore respectfully (very respectfully, given that it articulates good policy in a vacuum) part company with *Hartbrodt* to the degree that it might be read to stand for the idea that equities *alone* can justify the termination of the statutory right.

In the same vein, there is a sentence in *Tire Distributors, supra,* 132 Cal.App.4th at page 544 which, if read out of context, can also be read for the proposition that the core test of when the statutory right to dismiss is simple "good faith," untethered to the statutory text.[15] In context, however, one can still find the necessary link to the idea of commencement of trial.

Factually, *Tire Distributors* was a complex case, the short version is this: There was a good faith settlement of the case about four days prior to the initiation of a summary judgment motion brought by two defendants, one of whom, Gary, was entitled to be dismissed from the case as a result of the settlement. (Gary was the father of the defendant making the settlement agreement and not technically a party to the settlement.) With the summary judgment motion pending, the plaintiff brought a motion to enforce the settlement agreement. The plaintiff failed to file opposition as to Gary's motion by the deadline, and a week after missing the deadline the trial court denied the motion to enforce. The plaintiff then made an interesting tactical decision: It went ahead and dismissed Gary without prejudice, and that same day sought writ relief from the trial court's order denying the motion to enforce. (*Tire Distributors, supra,* 132 Cal.App.4th at pp. 541–542.)

---

[15] Specifically, in concluding that the standard of review was abuse of discretion, the court said: "As we discuss *post*, every court to consider this issue has based its holding on the facts and circumstances surrounding the dismissal, evaluating whether allowing the dismissal to stand would be unfair or would endorse dishonest litigation tactics." (*Tire Distributors, supra,* 132 Cal.App.4th at p. 544.)

Things got more complicated when the appellate court stayed proceedings and then issued a notice of intent to grant the writ in the first instance. But then Gary sought relief from the stay on the ground that he was not a party to the settlement. The appellate court granted that request. Eventually the appellate court issued a decision granting the plaintiff's writ (i.e., the settlement agreement was indeed enforceable). In the meanwhile, though, Gary sought to have the trial court vacate his dismissal without prejudice and enter an order granting his unopposed summary judgment motion. The trial court granted both.

On appeal, the appellate court found it unthinkable that the rule from the *Cravens* decision should apply. It ruled that the earlier dismissal was effective, so that the trial court lacked jurisdiction to grant the summary judgment. (*Tire Distributors, supra*, 132 Cal.App.4th at p. 547.)

It is true that in the process of reversing the order vacating the earlier dismissal, the *Tire Distributors* court wove the theme of good faith into its rationale. (E.g., "The legal principles that have evolved in this area tend to focus on the reasons for the dismissal and whether the plaintiff acted in good faith or merely for tactical reasons designed to prevent a defendant from obtaining an otherwise inevitable summary judgment." (*Tire Distributors, supra*, 132 Cal.App.4th at p. 544.)) After all, given the facts of the case, it would be practically impossible for any court to ignore the actual good faith of the plaintiff in initially dismissing Gary.

But the good faith theme was still tied to the problem of the impending adjudication on the merits posed by Gary's summary judgment motion. The court emphasized that it was the settlement that resulted in Gary's dismissal. (*Tire Distributors, supra*, 132 Cal.App.4th at p. 547.) Since the settlement was the undisputed motivation for Gary's dismissal (*ibid.* ["there is no substantial evidence that TDI's dismissal of Gary was motivated by anything other than its belief that the dismissal was a term of the settlement"]), the *Cravens* rule—where the plaintiff had also missed the deadline to file opposition to a summary judgment motion—was inapplicable.

We need only add by way of a gloss on *Tire Distributors* that *of course* the *Cravens* rule (see also *Mary Morgan*) was not applicable because the settlement agreement dismissing Gary antedated the filing of the summary judgment motion (by four days), and, as emphasized by the *Tire Distributors* court, the voluntary dismissal of Gary was a *consequence* of the settlement, not a consequence of the summary judgment motion. The references to unfairness or good faith in the *Tire Distributors* opinion were ways of making that precise point. The *Tire Distributors* opinion should not, divorced from its facts, be read for the idea that unfairness or good faith in a vacuum are all

that a court needs to look at in deciding whether a voluntary dismissal is effective. If, by some weird out-of-context exegesis, *Tire Distributors* were read for that idea,[16] we would be forced to respectfully decline to follow it because unfairness in a vacuum is a test inconsistent with the statutory language of section 581, subdivision (b)(1), not to mention the Supreme Court's decision in *Christensen*; if the *Christensen* court had employed some generalized "unfairness" or "good faith" test, the case would have gone the other way. As we have seen, all the Supreme Court cases have stayed close to the legislative text, which confers on plaintiffs a *right* to dismiss prior to *commencement of trial*.

### 5. Application of the "Mere Formality" Test to the Case at Hand

The trial court did not specify the basis of its May 6 OSC regarding dismissal or other sanctions, though it is clear that the OSC did not *necessarily* contemplate complete dismissal—otherwise the "or sanctions" part of the OSC would not have been included. And we dare say that the trial court might very well have exercised its discretion *not* to dismiss the case if counsel for plaintiff Franklin had shown up to provide some reason for his failure to attend the mandatory settlement conference, or even just to beg for mercy. So, unlike *Miller* (deemed admissions), *M & R* (mandatory five-year dismissal), or *Cravens* (failure to timely file opposition to summary judgment) there was no inevitability of dismissal based on milk that had already been spilled.

Nor was there any public announcement of impending dismissal, tentative or otherwise, which would suggest some substantive confrontation by the court with the legal merits of the case—a "trial of an issue of law" as the *Wells* court put it—or even that dismissal was procedurally mandated in light of counsel's apparent dereliction. (See *Groth Bros., supra,* 97 Cal.App.4th at p. 70 [court concerned that last minute dismissals would undermine the "tentative ruling system"].)[17]

---

[16] At oral argument and in supplemental briefing afterwards, counsel for respondent Wilson commended the *Tire Distributors* case to our attention precisely because a free-floating good faith test provides the most support for the trial court's decision in this case, even though, as it turned out, *Tire Distributors* is one of those cases upholding a voluntary dismissal. (Cf. fn. 1 above, and the whole problem of the fact that the record doesn't exactly make plaintiff's counsel look good.)

[17] The *Groth Bros.* point is well taken. While tentative rulings aren't usually carved in stone so that oral argument becomes meaningless (at least they are not supposed to be carved in stone, see generally *Moles v. Regents of University of California, supra,* 32 Cal.3d 867), tentatives do (or should) represent the product of a real judicial confrontation with a given legal task. For that reason, we see nothing inconsistent with the tentative ruling cases such as *Groth Bros.* or *Mary Morgan* and the need for any case in this to be faithful to the idea that the

Nor, of course, had the case experienced anything on the order of an adjudication of the merits in some auxiliary context, like referral to a referee (*Gray*) or to judicial arbitration (*Herbert Hawkins, supra*, 140 Cal.App.3d 334, 337 [allowing dismissals after completion of judicial arbitration "mocks" judicial arbitration statutes].)

In short, the OCS regarding dismissal or sanctions was miles away from the "commencement of trial" which is the statutory benchmark for a plaintiff's right to dismiss.

Next we ask this question: Can it be said that Franklin's counsel's bad faith, including not appearing at a mandatory settlement conference, is sufficient by itself to justify cutting off his client's statutory right to dismiss? We must answer no. As noted above, a good faith-bad faith test might be an excellent judicial policy and indeed we might adopt it ourselves if writing in vacuum. But it's not what the Legislature said. The Legislature said "commencement of trial" and we therefore must conclude the trial court's decision was error.

### B. Could the Trial Court Dismiss the Case (Essentially, for Lack of Prosecution) with Prejudice? No.

No doubt one day our high court will revisit the subject, already visited in *Goldtree*, *Wells* and *Christensen*, of the precise moment of cutoff and we will know whether we have been correct in rejecting the idea that substantive evidence of "dishonest litigation tactics" or unfairness is enough, by itself, to cut off plaintiff's statutory right to dismiss. And of course the high court is more than welcome to this case, if the court deems it the appropriate vehicle. (Shades of Henny Youngman: Take this case. *Please* take this case.)

Assuming, in that regard, that we have been incorrect and plaintiff Franklin lost the right to dismiss by May 18 (or, as *Tire Distributors* intimates, if the retroactive revocation of that right on May 19 as tested by an abuse of discretion standard were upheld), the question arises as to whether the trial court could properly enter its own dismissal with prejudice, such that the dismissal would have a res judicata effect. Since there are only two possible bases for that dismissal, and neither permits a dismissal with prejudice having res judicata effect, the answer is no.

---

right to dismiss exists up to the commencement of trial. As *Goldtree* and *Wells* teach us, adjudication of an issue of law can be a "trial" too, and such an adjudication substantively takes place when there is a tentative ruling.

### 1. *No Dismissal with Prejudice Pursuant to Local Rules*

While the trial court did not mention them, Orange County Superior Court local rules are one possible source of authority to dismiss the case.[18] Orange County Superior Court, like some other large urban courts in the state, has local rules that (a) require attendance at mandatory settlement conferences[19] and (b) allow for dismissals of cases for failure to comply with local rules, even when the fault is solely counsel's.[20] Thus, Orange County Superior Court local rules contemplate at least the theoretical possibility that plaintiffs might lose their entire case if their attorneys don't show up at a single mandatory settlement conference.

However, even assuming that the local rules validly contemplate such a draconian possibility (and there is at least a colorable case to be made that they don't),[21] the Legislature has enacted a statute, section 575.2, which sets

---

[18] We also explore the subject because of the standard rule of appellate procedure that trial court judgments are (generally) upheld if the trial court is right for any reason, regardless of the reason it actually relied on. (E.g., *Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 20 [115 Cal.Rptr.2d 179]; 9 Witkin, Cal. Procedure (4th ed. 1997) § 34.)

[19] Orange County Superior Court Local Rules, rule 448(A) provides in part: "All trial counsel and parties shall attend a mandatory settlement conference set by the trial judge."

[20] Orange County Superior Court Local Rules, rule 454 provides in part: "Upon notice and after hearing, if the court finds any counsel . . . has failed to comply with these local court rules or has not proceeded with due diligence in preparing the case for trial, the court, on motion of a party or on its own motion, may 1) strike all or any part of any pleading of that party; 2) dismiss the action or proceeding or any part thereof . . . ."

[21] There is a reasonable argument to be made that Orange County's local rules should not be read as providing for the dismissal of a case solely on the ground that the plaintiff's attorney fails to show up at a settlement conference. Orange County Superior Court Local Rules, rule 448(E) provides: "The failure of any person to prepare reasonably for, appear at, or participate in good faith in a settlement conference as required by this rule, unless good cause is shown for that failure, is an unlawful interference with the proceedings of the court, and the court may order the person at fault to pay the opposing party's reasonable expenses and attorney fees." That provision suggests that, at least for a first offense, payment of the other side's expenses and fees is the presumptive remedy. Also, Orange County Superior Court Local Rules, rule 448(D) provides: "At the [mandatory settlement] conference, the attorney who will try the case must be present or represented by someone completely familiar with the case and who has full authority to enter into stipulations. If the court finds plaintiff or cross-complainant has not proceeded with due diligence in preparing the case for trial, the case, as to that party, *may be dismissed pursuant to sections 583.410* et seq. [allowing discretionary dismissal for delay in prosecution] or 581(d) [requiring dismissal 'with prejudice, when upon the trial and before the final submission of the case, the plaintiff abandons it'] of the Code of Civil Procedure and/or sanctions imposed pursuant to Rule 454. If the court finds that any defendant or cross-defendant has failed to comply with these rules, the court may impose sanctions pursuant to Rule 454." (Italics added.) This provision essentially incorporates the Code of Civil Procedure sections regarding delay in prosecution or abandonment into the local rules, and no one would ever assert that a trial court acts within those sections if it dismisses a case for a single missed mandatory settlement conference. However, since, as we

limits on the ability of trial courts, acting pursuant to local rules, to dismiss cases for violations of local rules. Basically, the restriction is: If it's solely the lawyer's fault and not the client's, any penalty for violation of local rules must be structured so as not to "adversely" affect the client's cause of action (or defense).

Section 575.2 is divided into two subdivisions, (a) and (b). While subdivision (a) does indeed allow for local rules to provide for the dismissal of a case for failure to comply with local rules,[22] subdivision (b) cautions that "any penalty" arising from the dereliction of counsel, as distinct from a client, must be visited only on counsel.[23] The clear implication of subdivision (b) is that in cases where failure to comply with some local rule is not attributable to the client, then dismissal of the *client's* case is off limits.[24] The court may hit the attorney with penalties, perhaps even severe penalties (see also Bus. & Prof. Code, § 6103 [failure of attorney to obey court order is grounds for discipline with state bar]) but, like the devil being allowed to afflict Job but only up to a point, there is one area that is off limits—the *client's* cause of action or defense. The client's case may not be adversely affected by malfeasance solely attributable to the attorney.[25] In this regard we need only note that an attorney's failure to pay sanctions to the other side for *his* not showing up to attend a mandatory settlement conference surely falls into the category of dereliction attributable to the attorney only. The record

---

are about to show, even if the rules were read to provide for such a result they could not be effective to accomplish it (a state statute precludes it), we need not determine the precise boundaries of these local rules in this opinion, and, despite the dicta in this footnote, this opinion should not be read as affecting those rules, one way or the other.

[22] It states: "Local rules promulgated pursuant to Section 575.1 may provide that if any counsel, a party represented by counsel, or a party if in pro se, fails to comply with any of the requirements thereof, the court on motion of a party or on its own motion may strike out all or any part of any pleading of that party, or, dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose other penalties of a lesser nature as otherwise provided by law, and may order that party or his or her counsel to pay to the moving party the reasonable expenses in making the motion, including reasonable attorney fees. No penalty may be imposed under this section without prior notice to, and an opportunity to be heard by, the party against whom the penalty is sought to be imposed." (§ 575.2, subd. (a).)

[23] It states: "It is the intent of the Legislature that if a failure to comply with these rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto." (§ 575.2, subd. (b).)

[24] Even a dismissal without prejudice might still adversely affect or "prejudice" the client if the statute of limitations had run.

[25] We perceive that even dismissing an action or defense based exclusively on an attorney's dereliction on the theory that the attorney will *ultimately* bear the cost in a legal malpractice action contravenes subdivision (b), because it "adversely affect[s]" the client by imposing on the client the significant costs in time, disruption and uncertainty that the client must inevitably bear even in a successful and collectable malpractice action. (§ 575.2, subd. (b).)

contains absolutely no indication that Franklin is implicated in any of its trial attorney's failures to attend various court hearings or pay sanctions.

## 2. No Dismissal with Prejudice Pursuant to State Statute

### a. Improper Notice

The other basic authority, and the one which the trial court itself relied on, is lack of, or delay in, prosecution.[26]

■ The subject of delay in prosecution is covered in section 583.410 (which is part of chapter 1.5 of title 8 of the Code of Civil Procedure). Section 583.410 gives a trial court discretion to dismiss an action for delay in prosecution,[27] though it confines both the procedure and criteria of any such discretionary dismissal to rules prescribed by the Judicial Council.[28] In response to section 583.410 the Judicial Council adopted rule 373 (now renumbered as 3.1342, hereinafter, rule 373) of the California Rules of Court. Rule 373 prescribes no less than 45 days' notice of any motion to dismiss for

---

[26] In supplemental briefing on this area, respondent Wilson cites us to *Reid v. Balter, supra,* 14 Cal.App.4th 1186 as authority for the idea that the trial court had the authority to dismiss the action with prejudice. *Reid* does indeed resemble the present case in that the trial court dismissed the case for a party's failure to show up at a mandatory conference (in *Reid,* a mandatory status conference), and in doing so basically relied on the two-year discretionary lack-of-prosecution statute. (See *id.* at pp. 1189–1190.) Unfortunately for Wilson, the similarities don't end there. The *Reid* case actually supports our determination that the trial court could not dismiss the case with prejudice for failure to show up at the mandatory settlement conference.

In *Reid,* the case was ordered to (judicial) arbitration. After the arbitrator made his award, the plaintiffs filed a request for trial de novo. When the plaintiffs failed to appear at a scheduled status conference, the trial court, among other things, dismissed the case under the *discretionary* dismissal statute (§ 583.410) dealing with lack of prosecution. (See *Reid v. Balter, supra,* 14 Cal.App.4th at pp. 1189–1190.) Fifteen months later the plaintiffs filed a motion for a status conference and trial date—it turned out that a substitute attorney at an earlier conference forgot to tell the plaintiffs' regular attorney about the status conference—and the trial court *vacated* its earlier dismissal, which decision was upheld by the appellate court in a subsequent appeal by the defendants after a victory by the plaintiffs in a jury trial. Here is what the appellate court plainly said in rejecting the defendants' attempt to keep their earlier procedural win: "We do not agree that warning plaintiffs their case could be dismissed if they failed to appear on May 15, 1989, for a trial setting conference is sufficient notice to sustain dismissing the case for failure to appear on October 27,1989, at a status conference." (*Reid, supra,* 14 Cal.App.4th at p. 1193.) And the trial court in *Reid* didn't even enter its original dismissal with prejudice—the reference to the discretionary lack of prosecution statute suggests that it was entered without prejudice.

[27] Section 583.410, subdivision (a) provides: "The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case."

[28] Section 583.410, subdivision (b) provides: "Dismissal shall be pursuant to the procedure and in accordance with the criteria prescribed by rules adopted by the Judicial Council."

delay in prosecution.[29] In the present case, the OSC on May 19 that resulted in the dismissal of Franklin's cause of action with prejudice was set on May 6. Franklin had less than 14 days' notice. Thus even if we deem the trial court's May 6 order setting an OSC for May 19 as the functional equivalent of a section 583.410 motion to dismiss for delay in prosecution, the targeted party did not receive sufficient notice under the terms of section 583.410 (which incorporate rule 373).

### b. The Legislature and Supreme Court Have Said That Dismissals for Lack of Prosecution Are to Be Without Prejudice

On top of that, however, is what we perceive to be an even greater and absolutely dispositive reason to set aside the May 19 order: the fact that the Legislature has made it clear, and Supreme Court case law has recognized, that dismissals for procedural dereliction pursuant to Chapter 1.5 are to be without prejudice.

We will begin with what the Legislature has said first. Section 581, subdivision (b)(4) states: "An action may be dismissed in any of the following instances: [¶] . . . [¶] (4) By the court, *without prejudice*, when dismissal is made pursuant to the applicable provisions of Chapter 1.5 (commencing with Section 583.110)." (Italics added.) Significantly, chapter 1.5 includes not only the discretionary provisions of section 583.410 (the "two-year rule" for discretionary dismissal for lack of prosecution[30]) but also, interestingly enough, sections 583.310 and 583.360, which set forth the more

---

[29] Rule 373(a) provided in part: "A party seeking dismissal of a case pursuant to article 4 (§ 583.410 et seq.) of chapter 1.5 of title 8 of part 2 of the Code of Civil Procedure shall serve and file a notice of motion at least 45 days before the date set for hearing of the motion . . . ." Under the recent renumbering, the rule substitutes "Code of Civil Procedure sections 583.410–583.430" in place of "article 4 (§ 583.410 et seq.) of chapter 1.5 of title 8 of part 2 of the Code of Civil Procedure."

[30] Section 583.410, subdivision (a) (the two-year rule) states in pertinent part: "The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case." While this statute does not make an explicit reference to two years, the next section, section 583.420 makes it clear that the discretionary provisions of section 583.410 are not triggered unless two years have elapsed since the action was commenced. Section 583.420, subdivision (a)(2)(B) states: "The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred: [¶] . . . [¶] (2) The action is not brought to trial within the following times: [¶] . . . [¶] (B) Two years after the action is commenced against the defendant if the Judicial Council by rule adopted pursuant to Section 583.410 so prescribes for the court because of the condition of the court calendar or for other reasons affecting the conduct of litigation or the administration of justice."

stringent five-year rule.[31] Section 581 thus sets up the general template for dismissals under California law.[32]

█ The Supreme Court recognized what the Legislature said in *Gonsalves v. Bank of America* (1940) 16 Cal.2d 169, 172–173 [105 P.2d 118]: "But it is a fundamental rule that a judgment is not *res judicata* unless it is on the merits, and a dismissal for delay in prosecution is not."

Decisions of the Court of Appeal have followed suit. (See *Mattern v. Carberry* (1960) 186 Cal.App.2d 570, 572 [9 Cal.Rptr. 137] [collecting authorities holding that "a dismissal for want of prosecution is not on the merits and therefore does not operate as res judicata to a subsequent proceeding"]; *Ashworth v. Memorial Hospital* (1988) 206 Cal.App.3d 1046, 1053 [254 Cal.Rptr. 104] [earlier dismissal under five-year statute had no res judicata effect].)[33]

It's pretty hard to argue with a clear statute on point, and clear language from the Supreme Court to boot. You rarely get cases where the governing authority is this dispositive. We are forced then to conclude that even if the trial court had a free hand to validly dismiss Franklin's lawsuit on May 19 because the May 6 OSC regarding dismissal or other sanctions was pending, the trial court had no authority to enter such a dismissal with prejudice.

---

[31] Section 583.310 states in its entirety: "An action shall be brought to trial within five years after the action is commenced against the defendant." Section 583.360 states in its entirety: "(a) An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed in this article. [¶] (b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute."

[32] But the statute does not purport to set up an exclusive template: Section 581, subdivision (m) is clear that section 581 is not intended to preempt the field. Subdivision (m) states: "The provisions of this section shall not be deemed to be an exclusive enumeration of the court's power to dismiss an action or dismiss a complaint as to a defendant." (§ 581, subd. (m).)

[33] Both the legislative and Supreme Court rule are to be expected given the fundamentals of res judicata. The very definition of res judicata contemplates a judgment on the merits, and dismissals for lack of prosecution under either the two-year (discretionary) or five-year (mandatory) rules are not on the merits. (See *Edmonds v. Glenn-Colusa Irr. Dist.* (1933) 217 Cal. 436, 439 [19 P.2d 502] ["The doctrine of *res judicata* is stated in a very carefully considered definition in 15 Ruling Case Law, pages 950, 951, in the following language: [¶] 'Briefly stated, this doctrine is that an existing final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit.' "].)

Of course, as we shall see in the next part of the opinion, certain kinds of seemingly "procedural" defects in cases, like statutes of limitations and even terminating sanctions for discovery abuse, can be "on the merits" for purposes of res judicata.

### 3. *The Seemingly Inconsistent Appellate Case Law Isn't*

We should note, albeit in passing, that *M & R, supra*, 11 Cal.App.4th 899 (five-year rule) and *Hartbrodt, supra*, 42 Cal.App.4th 168 (discovery sanctions) contain language that, if read carelessly and taken out of context, might lend support for the idea that a dismissal for lack of prosecution could be "with prejudice" in the sense of res judicata. That is, each case uses the phrase "on the merits" in such a way as to possibly imply that the procedurally based (that is, based on some dereliction of counsel in the conduct of the litigation as distinct from the underlying merits of the plaintiff's case) pending dismissal motions that precipitated the voluntary dismissals in each case would have yielded a dismissal "on the merits," i.e., one that would be res judicata.

#### a. *Hartbrodt*

Let's take the later-decided case, *Hartbrodt*, because it is quickly distinguishable. *Hartbrodt*, as we have noted, involved an impending possible dismissal for violation of a discovery order. But, as we have also noted, at the time *Hartbrodt* was decided (and to this day) case law had already established that dismissals pursuant to a terminating sanction for violation of discovery orders are indeed res judicata. (See *Kahn v. Kahn, supra*, 68 Cal.App.3d 372.) Since the present case involves a dismissal for lack of prosecution, not discovery violations, any intimation about the "merits" of the case being decided in the discovery sanction motion is inapplicable to the case before us now. Further, all three of the reasons the *Kahn* court gave for making terminating sanctions in discovery res judicata would clearly not apply to dismissals for lack of prosecution.[34]

---

[34] The *Kahn* court gave three reasons to conclude that a prior dismissal for failure to comply with discovery rules is indeed res judicata:

—(1) As a matter of statutory construction, it would defeat the purpose behind the discovery sanction to allow cases to "arise phoenixlike" in new actions based on the same allegations. (See *Kahn v. Kahn, supra*, 68 Cal.App.3d at p. 383.) In that regard, the *Kahn* court reasoned that the power of trial courts to enter dismissals in the first place for discovery violations was rooted in the theory was itself a manifestation of the substantive merits of the case: "The ratio decidendi behind such cases appears to be on the theory that a persistent refusal to comply with an order for the production of evidence is tantamount to an admission that the disobedient party really has no meritorious claim or defense to the action." (*Id.* at p. 382.)

·—(2) Section 582 tells us that, in distinction to the various kinds of dismissals without prejudice under section 581, " 'In all other cases judgment shall be rendered on the merits,' " and the discovery statutes certainly come within the rubric of " 'all other cases.' " (*Kahn v. Kahn, supra*, 68 Cal.App.3d at pp. 382–383, italics omitted.) ·

—(3) Analogous federal discovery statutes had been interpreted by federal courts to mean that dismissals for discovery noncompliance constituted "a final judgment on the merits." (*Kahn v. Kahn, supra*, 68 Cal.App.3d at p. 384.)

Reason (1) does not apply to dismissals for lack of prosecution because the inference of a failure of a case on the substantive merits that attends when a party violates discovery orders is

### b. *M & R*

The earlier case, *M & R*, is a little more complicated from our point of view, because it involved a strictly procedural dismissal which, unlike *Hartbrodt* which involved terminating sanctions in the discovery context, did not even indirectly implicate the action's substantive merits.[35] And it was clearly a "lack of prosecution" case, centering on a motion for mandatory dismissal pursuant to the five-year statute. At several places in the opinion, the phrase "on the merits" is indeed used.[36]

If *M & R* is read for the unqualified proposition that a dismissal pursuant to the five-year statute (which is also part of "chapter 1.5" as used in section 581 subdivisions (b)(4) & (g)) is "on the merits," therefore "with prejudice," therefore res judicata, it is simply incorrect. Such a proposition is flatly

not present—even the best cases can fail for lack of prosecution. Reason (2) does not apply because, while section 582 by its terms, applies to the discovery sanction statutes, it does not apply to template of dismissals under section 581, to which it is an exception. And reason (3) does not apply for basically the same reason: Unlike the discovery area where recourse to federal law is instructive, in the context of dismissals for lack of prosecution we don't care what federal law says because our state statute clearly says that such dismissals are without prejudice.

[35] Reason (1) given by the *Kahn* court (see fn. 34 above) recognized that discovery recalcitrance can be, essentially, a surrogate for the fact that the case is a loser on the merits.

[36] Here they are:

(1) Barely five sentences into the opinion, in the course of laying out the facts, the court wrote: "When plaintiffs did not bring the matter to trial within five years, defendants moved for mandatory dismissal of the action, a procedure which would be a determination on the merits entitling defendants to their attorney fees. (Code Civ. Proc., §§ 583.310, 583.360; Civ. Code, § 1717; *Elms v. Builders Disbursements, Inc.* (1991) 232 Cal.App.3d 671, 675 [283 Cal.Rptr. 515].)" (*M & R, supra,* 11 Cal.App.4th at p. 901.)

(2) In the process of setting up the appellants' contention to be refuted, the court opened a paragraph with this sentence: "It is not true, as plaintiffs claim, that the only decisions which cut off the right to a voluntary dismissal are those which in some way adjudicate the merits of an action." (See *M & R, supra,* 11 Cal.App.4th at p. 904.)

(3) The court followed (2) with the assertion that the phrase "commencement of trial" in the voluntary dismissal statute "certainly requires no adjudication of the merits." (*M & R, supra,* 11 Cal.App.4th at p. 904.)

(4) In the context of discussing *Wells, M & R* noted that in 1947 the Legislature had placed the phrase "commencement" in front of "trial" in the statute "in response to concerns that a plaintiff might be able to obtain a voluntary dismissal after the parties had engaged in litigation but before the merits had been fully adjudicated." (*M & R, supra,* 11 Cal.App.4th at p. 904, citing *Wells, supra,* 29 Cal.3d at p. 788.)

(5) After describing the facts in *London, supra,* 99 Cal.App.2d 876, the *M & R* court then derived this rule from the case: "The court in *London,* therefore, held that the plaintiffs' right to a voluntary dismissal was cut off once the defendants' right to a mandatory dismissal had become fixed, whether or not by an actual ruling of the court, and irrespective of whether that ruling in any way adjudicated the merits of the case." (*M & R, supra,* 11 Cal.App.4th at p. 905.)

contrary to what the Supreme Court said in *Gonsalves* and what the Legislature has said in the very text of section 581.

Rather, however, *M & R* should be· read as standing merely for a more nuanced point: That a dismissal under the five-year statute can have adverse repercussions on the plaintiff even though those repercussions do not extend as far as a dismissal ·that is res judicata.

The repercussions specifically at issue in *M & R* were payment of attorney fees under a *prevailing party* statute (§ 1717), and one must remember that the issue· of whether a litigant is a prevailing party (and therefore entitled to fees) is different from the issue of whether that litigant ·can use a previous dismissal for lack of prosecution as res judicata in a future action.

That reading is demonstrated by the facts of the *M & R* case, and the nature of the authorities employed by the *M & R* court. By letting the five-year deadline run, the plaintiff had, in 'effect, given the defendant a "vested" right (our .phrase, not *M & R*'s) to a dismissal pursuant to the five-year statute. So, the defendant filed a motion to dismiss under the five-year statute, and, as the court noted (though perhaps it could have done so a tad more clearly), if that motion had been granted, the defendant, as *prevailing party*, would have been entitled to its attorney fees. Thus the court's cited authorities in its first reference to "on the merits" were to all authorities making the point that a defendant who wins on the five-year rule is still a prevailing party entitled to collect attorney fees.[37] Put another way, *M & R* is part of a group of cases that have considered under what circumstances a prevailing party may collect costs and attorney fees after a voluntary dismissal. (See cases discussed in *Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873 [6 Cal.Rptr.3d 116] [homeowners who sued homeowners association liable for· statutory fees awardable to prevailing party in homeowner association litigation, even after they dismissed complaint without prejudice].)

---

[37] The first two authorities—the two statutes from the Code of Civil Procedure—say nothing to about the "merits" or any res judicata effect—those are merely the code sections setting forth the five-year rule and the mandatory nature of dismissals under·it. The next authority, Civil Code section 1717, is the well-known reciprocal attorney fee provision in California and its focus is on *prevailing*, not on *why* a litigant is prevailing. Likewise, the last cited authority, *Elms v. Builders Disbursements, Inc., supra*, 232 Cal.App.3d at page·675, did not involve any voluntary dismissals before a dismissal under the five-year rule. The issue in *Elms* was whether the defendant was the "prevailing party" under section 1717, which the court held that they were on the ground that they had obtained all the relief it had requested. There is nothing in the *Elms* opinion to equate the right of a prevailing party under section 1717 to obtain attorney fees with having prevailed "on the merits" as distinct from simply having prevailed.

## IV. DISPOSITION

■ The trial court lost its authority to dismiss the case pursuant to the OSC on May 18, when plaintiffs validly exercised their right to dismiss voluntarily. On top of that, the trial court had no authority to override that dismissal on May 19 and enter a new dismissal with prejudice. Therefore, the trial court should have granted plaintiff's motion to vacate its May 19 order. We therefore reverse the order denying that motion, with directions to make a new order, vacating the dismissal of May 19 and leaving the voluntary dismissal of May 18 as the operative document.

In recognition that it was both the derelictions of plaintiff's counsel that got his client into this mess and of the complexity of the law, in the interests of justice each side will bear its own costs on appeal.

One more thing. The Rutter Guide points out that some courts, including the Orange County Superior Court, have local rules which provide that when an action is refiled after dismissal, it must be assigned to the same judge. (See Rutter Guide Civil Procedure Before Trial, *supra*, ¶ 11:6.3, p. 11-3.) Whether, under section 170.6, subdivision (a)(2), Franklin might yet have a right to make a peremptory challenge to Judge Perk following "reversal on appeal" of the trial court's decision, is a matter that is not before us, and our opinion is, er, "without prejudice" to either side on the point in any future proceedings.

However, even if, arguendo, plaintiff Franklin will have such a right, this is a perfect case for application of the local rule that requires assignment to the same judge after dismissal and refiling. The Legislature may have conferred on Franklin the right to dismiss on May 18, but it has not conferred on Franklin the right to judge shop. Absent a valid peremptory challenge, there is no reason Judge Perk shouldn't preside over the balance of the case. (Even assuming a right to make a valid peremptory challenge, if Franklin has such a right, it is going to have to spend it against Judge Perk.)

Accordingly, unless Judge Perk is retired, somehow disqualified pursuant to section 170.6, subdivision (a)(2), or not available as defined by section 661, all future proceedings involving any cause of action by Franklin for breach of contract against Wilson based on the contract at issue in this case shall be heard before Judge Perk, regardless of the trial court panel or department to which he is assigned at the time.

Fybel, J., concurred.

**ARONSON, J.,** Concurring.—I concur in the majority's conclusion plaintiff properly invoked his statutory right to voluntarily dismiss his lawsuit before the trial court heard the motion to dismiss. Because Code of Civil Procedure section 581, subdivision (b)(1) (section 581), provides that a party may dismiss "at any time before the actual commencement of trial," plaintiff was entitled to file a dismissal without prejudice, even if the court had posted a tentative ruling announcing its intention to dismiss plaintiff's case with prejudice.

I write separately to voice my concern that section 581's clear definition of when trial commences has been obscured by a growing thicket of judicial decisions that rely more on the courts' own sense of fairness than the Legislature's express mandate. For example, *Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765 [57 Cal.Rptr.2d 4], relied upon "[l]ogic and fairness" and "the need to reconcile the competing interests" in denying the plaintiff the right to dismiss after the court continued the defendants' summary judgment hearing to allow discovery. (*Id.* at p. 771.) *Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60 [118 Cal.Rptr.2d 405], invoked "policy concerns" to prohibit voluntary dismissal after a tentative ruling on a demurrer was posted, fearing a contrary result would undermine the superior court's tentative ruling system. (*Id.* at p. 70.) In *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168 [49 Cal.Rptr.2d 562] (*Hartbrodt*), the court concluded the plaintiff could not dismiss before a hearing on the defendant's motion for terminating sanctions, declaring the plaintiff's reliance on section 581 a mere "tactic" designed to "defeat the trial court's power to enforce its discovery orders." (*Hartbrodt*, at pp. 175–176.)

We must presume, however, the policy issues determined in the foregoing cases were considered and rejected by the Legislature when it adopted section 581. Under this section, a party has an absolute right to dismiss an action if done "before the actual commencement of trial," even if this places the other party at a disadvantage and gains the plaintiff a tactical respite. (§ 581.) What section 581 means by "commencement of trial" presents no mystery because it is defined in the statute.

My colleagues have deftly attempted to reconcile the leading cases, but even they concede their "mere formality test" fails to account for all the disparate rationales and results in the case law. (Maj. opn., *ante*, at p. 204.) For example, my colleagues reject *Hartbrodt, supra*, 42 Cal.App.4th 168 because it does not fit within their formula. The problem is the mere formality test is not really a test one would apply to reach a legally correct conclusion, but a general description that attempts to reconcile appellate decisions, some of which have strayed too far from the statutory language and Supreme Court precedent interpreting section 581.

The source of the problem may stem from *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781 [176 Cal.Rptr. 104, 632 P.2d 217], where the Supreme Court interpreted the commencement of trial language in section 581 to include the trial of an issue of law, which occurs when a court rules on a demurrer or summary judgment motion. Courts have relied on *Wells* to stretch "commencement of trial" to encompass any procedure that is potentially dispositive, including demurrer or summary judgment tentative rulings, or a pending motion for terminating sanctions. The issue appears ripe for further guidance from the Supreme Court or the Legislature.

Respondents' petition for review by the Supreme Court was denied June 13, 2007, S151732.