Filed 10/3/16  Liu v. Trask CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALBERT LIU,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PHILIP A. TRASK et al.,<br><br>    Defendants and Respondents. | B258112, B260517<br><br>(Los Angeles County<br>Super. Ct. No. BC512303)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

The opinion filed September 15, 2016, and not certified for publication, is modified as follows:

1.  On page 30, delete footnote 14.

2.  On page 30, at the end of the first full paragraph, add the following sentence:

On remand, Liu and the PPDG defendants will have an opportunity, after resolution of Liu's claims for violation of Labor Code sections 201 and 203, to make appropriate requests for attorneys' fees other than under Civil Code section 1717.

The paragraph should now read:

Liu argues that, because the trial court erred in vacating the voluntary dismissal of his contract-related claims, his voluntary dismissal precluded an award of attorneys' fees to the PPDG defendants based on the attorneys' fees provision in his employment

contract. Liu is correct. Civil Code section 1717, subdivision (b)(2), bars the PPDG defendants' claims for prevailing party attorneys' fees. The PPDG defendants' only response is to suggest that the trial court did not err in vacating Liu's dismissal, an argument we have rejected. Because Liu successfully dismissed his contract-related claims under section 581, the trial court erred in awarding attorneys' fees to the PPDG defendants. (See *Gogri*, *supra*, 166 Cal.App.4th at p. 274 [where trial court erred in vacating voluntary dismissal that was timely under section 581, "[t]he trial court had no authority to award [the defendant] Civil Code section 1717 attorney fees on [the plaintiff's] contract causes of action"]; *Mesa Shopping Center-East, LLC v. Hill*, *supra*, 232 Cal.App.4th at p. 902 [trial court has "no discretion to award fees" under Civil Code section 1717 where action on contract is voluntarily dismissed].) On remand, Liu and the PPDG defendants will have an opportunity, after resolution of Liu's claims for violation of Labor Code sections 201 and 203, to make appropriate requests for attorneys' fees other than under Civil Code section 1717.

This order does not change the judgment. Respondents' petition for rehearing is denied.

_____

PERLUSS, P. J.          SEGAL, J.          ZELON, J.

2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALBERT LIU, | B258112, B260517 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC512303) |
| PHILIP A. TRASK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert L. Hess, Judge.  Reversed and remanded with directions.

Blecher Collins Pepperman & Joye, Maxwell M. Blecher, Howard K. Alperin and Taylor C. Wagniere for Plaintiff and Appellant.

Law Office of Jeff Augustini and Jeff Augustini; Law Office of Peter Sloan and Peter Sloan for Defendants and Respondents.

_____

# INTRODUCTION

Dr. Albert Liu, a dentist, sued the Pacific Palisades Dental Group (PPDG) and its principals for breach of contract, quantum meruit, fraud and deceit, Labor Code violations, and other contract-related claims arising out of Liu's employment with PPDG. Liu appeals from the judgment entered after the trial court imposed terminating sanctions because of Liu's prelitigation misconduct of furtively obtaining and reviewing attorney-client privileged email communications between PPDG and its attorneys, and testifying falsely about his conduct at an evidentiary hearing.

Liu raises four issues on appeal. First, he argues that the trial court erred in imposing terminating sanctions because his misconduct was not so egregious that there was no possibility for a fair trial on the merits with the lesser sanction of disqualifying his counsel. Second, he contends that, because he timely filed a request for dismissal without prejudice of his contract-related claims, the trial court lacked jurisdiction to issue terminating sanctions on those claims. Third, he argues that the trial court exceeded its authority when, in addition to dismissing his claims with prejudice, the court enjoined him from filing any claims in the future arising out of his employment with PPDG. Finally, he contends that the trial court erred in awarding attorneys' fees to PPDG and its principals based on the attorneys' fees provision in Liu's employment contract after he voluntarily dismissed his contract-related claims.

We agree with Liu's first contention with respect to his Labor Code claims only, and also with his second, third, and fourth contentions. Therefore, we affirm the dismissal of Liu's causes of action for quantum meruit and fraud and deceit, and otherwise reverse the judgment.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.      *Liu's Employment Dispute with PPDG*

In November 2009 Dr. Philip Trask hired Liu to work as a pediatric dentist with PPDG, a partnership Trask had formed with another dentist, Dr. Philip Kamins. Liu's employment agreement provided that he would begin as a salaried, at-will "associate," but that on January 1, 2012 he would acquire the right to buy into PPDG as an equity partner.

In August 2011 PPDG hired another pediatric dentist, Dr. Carrie Loewen, and three months later, on November 15, 2011, Trask met with Liu to discuss his future with PPDG. Trask informed Liu that PPDG was terminating Liu's employment, effective mid-December. Liu nevertheless expressed his intent to pursue buying into the partnership and requested that Trask and Kamins provide him with a figure for doing so. After this conversation with Trask, Liu began to seek advice concerning his employment situation from his sister, Catherine Liu, who was an attorney.

Approximately two weeks later, on November 29, 2011, Liu met with Trask and Kamins to discuss his request to buy into the partnership. Also present was Melanie Boyd, the executive director of PPDG, who was responsible for PPDG's day-to-day financial operations. Liu came away from this meeting with the understanding that, although PPDG was terminating his employment as an associate, his joining PPDG as a partner remained a possibility, subject to further negotiation.

PPDG had scheduled Liu to see patients through December 13, 2011. On December 2, however, Kamins and Boyd met Liu when he arrived at PPDG's office, informed him he was no longer employed there, and supervised Liu while he packed his belongings and left the premises.

Upset by these developments, Liu discussed his legal options with his sister Catherine. In March 2012 Liu and Catherine contacted another attorney, Ernest Price. Liu retained Price to represent him, with Catherine's assistance, in his dispute with

PPDG. Price and Catherine attempted unsuccessfully to settle the dispute through mediation in December 2012.

B. *Liu's Lawsuit*

On June 17, 2013 Liu filed this action against Trask, Kamins, their professional corporations, and PPDG (the PPDG defendants). Liu alleged causes of action for breach of contract (lost wages), violation of Labor Code sections 201 and 203,[1] breach of the implied covenant of good faith and fair dealing, quantum meruit, fraud and deceit, breach of fiduciary duty and wrongful dissociation, and breach of implied-in-fact contract.

The PPDG defendants served Liu with a deposition notice and a request for production of documents, asking for all documents in his possession that referred or related to the PPDG defendants. At his deposition on July 26, 2013, Liu produced some documents responsive to the PDDG defendants' request, but stated he was still in the process of giving other responsive documents to his attorney for review. Liu also stated he had obtained some of the documents he was producing, including a copy of PPDG's partnership agreement, by printing them from PPDG's computer system after he learned PPDG was terminating him but before he stopped working there. He did so, he explained, because he was confused and upset, "felt that there was something going on here, something not on the up-and-up," and he wanted to see if there was "anything that would support the fact that [he] didn't know what [was] going on." He recalled printing documents on two evenings, after he finished seeing patients, when no one else was in the office.

---

[1] Labor Code section 201 provides for, among other things, immediate payment of wages upon an employee's discharge. (Lab. Code, § 201.) Labor Code section 203 imposes a penalty when an employer willfully fails to comply with Labor Code section 201. (*Id.*, § 203.)

4

On August 23, 2013 Price produced additional Bates-stamped documents responsive to PPDG's request, as well as other documents that were not Bates-stamped,[2] accompanied by a cover letter that stated: "In preparing this production it appears that confidential documents relative to PPDG were uncovered – these are not bate stamped [*sic*] and this material is being returned to you. We have not and will not utilize it and have not maintained copies." The unstamped documents were email communications among Trask, Kamins, Boyd, and Peter Sloan, an attorney PPDG had retained to advise it on employment issues concerning Liu.

A week later, Sloan, who was representing the PPDG defendants in this action, informed Price that the Bates-stamped documents produced on August 23 included another six pages of emails between Sloan and PPDG. In response, Price stated that, although initially he believed those emails were addressed to Liu, on closer inspection it now appeared Liu may not have received them. Price stated that, after confirming this with Liu, he would destroy the documents. Price later informed Sloan that he had destroyed the documents and that neither Price nor Liu retained any copies.

Counsel for the PPDG defendants deposed Liu again on October 24, 2013, at which time Liu explained how he came to possess the emails among Trask, Kamins, Boyd, and Sloan. Liu testified that, shortly after Trask first informed him that PPDG intended to terminate him, Liu was printing documents from PPDG's computer system, when he encountered a printer error. After fixing the problem, he went to the computer on Boyd's desk to clear pending print jobs. While at Boyd's computer, Liu began "trying to look for any information or data that would help explain why [PPDG] suddenly terminated [him] for no good reason." While doing so, he "quite accidently" clicked on

---

[2]     "Bates-stamped" refers to documents that are numbered sequentially pursuant to a system designed by Edwin G. Bates for use "in connection with the sale of automatic hand numbering machines." (*Bates Mfg. Co. v. Bates Numbering Mach. Co.* (C.C.D.N.J. 1909) 172 F. 892, 893.)

the icon for Boyd's email program, which opened her office email account.[3] He then "printed out some emails that [he] thought might explain what was going on." Liu stated that, at the time, he did not know Sloan was PPDG's lawyer and "did not read the emails very carefully to analyze [their] content." Liu did not recall whether Boyd's email account contained folders for storing emails. He also stated Boyd's computer was not protected by a password.

C.    *The PPDG Defendants' Motion for Terminating Sanctions*

In November 2013 the PPDG defendants filed a motion for terminating sanctions to dismiss Liu's action with prejudice, or in the alternative to disqualify Liu's counsel, because of misconduct by Liu and his attorneys. Citing Liu's deposition testimony regarding the emails he printed from Boyd's computer, the PPDG defendants argued that Liu stole, reviewed, and maintained for more than two years "over 100 pages" of privileged attorney-client email communications bearing directly on issues and strategies relating to Liu's claims against PPDG.[4] The PPDG defendants argued that the only remedy capable of fully alleviating the prejudice resulting from this misconduct was dismissal of the action. They argued in the alternative that the court should disqualify Liu's attorneys because they possessed the privileged emails for "upwards of two years" and admittedly had reviewed the substance of some if not all of the emails.

In his supporting declaration, Sloan stated that the "confidential documents" referred to in, and returned with, Price's August 23, 2013 letter were 33 privileged attorney-client emails ("more than 100 pages") between Sloan and PPDG concerning

---

[3]    Explaining what he was trying to do when he accidentally clicked on the email icon, Liu stated, "I think most likely I was looking to open up [Internet] Explorer, because I was waiting for my documents to print out."

[4]    The PPDG defendants also alleged Liu stole "thousands" of pages of proprietary and confidential information, including PPDG's financial information and its confidential patient information, but stated this was not the basis of their motion for terminating sanctions.

Liu's "termination and his partnership claims." Sloan stated that "[t]hese extensive e-mails effectively provided [Liu] with an entire 'playbook' as to [PPDG's] considerations, legal and factual, as to virtually all of the claims set forth in this action."

In her supporting declaration, Boyd stated that, at all times during the relevant period, her email program was protected by a password to prevent unauthorized access, and Liu had no authority to access her email. Thus, she explained, "Liu either had to 'hack into' my system to access the emails, or alternatively must have waited for a day in which I inadvertently failed to properly log out of the program to access those emails." She also stated that she maintained the emails she received from Sloan, sent to Sloan, or was copied on and that involved Sloan in a separate folder of her email program labeled "Attorneys."

In his opposition to the motion, Liu contended that PPDG had failed to establish that any of the documents were privileged or that, even if some of them were privileged, dismissal or disqualification was warranted. In his declaration, Liu again recounted the occasion on which, after clearing a printer error, he used Boyd's computer, "inadvertently" clicked on her email icon, and printed emails that appeared relevant to his termination and request to buy into the partnership. He stated that he also discovered and printed a copy of Loewen's employment agreement and the PPDG partnership agreement. Liu then described another occasion, several days later, when he printed additional emails: "I noticed that Ms. Boyd's computer was left on (as was typical) and her inbox was left open. I saw, based on the subject line and a cursory read, additional emails which appeared to involve me and my status at PPDG. As such, I printed those emails as well."

Liu also stated that, during his time at PPDG, all employees had unrestricted access to the computer Boyd used, there was no password on either Boyd's computer or her email account, and he did not bypass any security protections to access the emails he printed. He stated that the emails he printed were located in Boyd's general "inbox," not in a folder labeled "Attorneys," and that at the time he did not know who Peter Sloan was or even that PPDG had retained counsel.

7

According to Liu, he printed approximately 150 pages of emails from Boyd's computer. He stated that he reviewed the emails and Loewen's employment agreement within days of obtaining them before putting them in a box and never reviewing them again, and that he never reviewed the partnership agreement. Liu estimated Sloan's name appeared in only 10 to 15 pages of the emails, and Liu denied any recollection of the substance of those communications. Liu could not recall any emails regarding PPDG's litigation strategy or its position on his claims in this case. Liu stated that in March 2012 he gave Price a box containing approximately 700 documents relating to his employment with PPDG, including the emails from Boyd's computer, Loewen's employment agreement, and the PPDG partnership agreement, and that he did not personally retain any copies of these documents.

Price stated in his declaration that, upon receiving the 700 documents from Liu in March 2012, he conducted "a superficial review primarily to affirm Dr. Liu's employment contract and his time records," but otherwise left these documents untouched until December 2012, when he began to prepare for the mediation with PPDG. "During this review," Price stated, "I noticed for the first time certain email print-outs that appeared to be communications between Mr. Sloan [who he knew was PPDG's lawyer ] and members of PPDG, to include what appeared to be also communications between Mr. Sloan and . . . Dr. Liu" (italics omitted). Price stated he also discovered at this time about 12 to 15 pages of emails that appeared to be communications between Sloan and Trask or between Sloan and Kamins, which he segregated and stored in a folder "marked with a yellow sticky 'privileged' and/or 'confidential' and/or 'not for use' sign." Price stated that, to the best of his knowledge, no one in his office used or reviewed the documents after he segregated them, at no time did he ever discuss the contents of the documents with Liu, and his impression was that Liu had no specific knowledge of them. These 12 to 15 pages, according to Price, were the documents he returned to Sloan without Bates stamps on August 23, 2013, and neither his office nor Catherine Liu retained any copies of the segregated documents after he returned them. Price stated that at no time did he, his staff, or his colleagues review or use the segregated

documents, nor did he have any specific or general knowledge of what information those dozen or so pages contained, other than they were emails addressed from or to Sloan. Regarding the additional several pages of Bates-stamped emails between Sloan and PPDG that he produced on August 23, Price repeated the explanation he had given Sloan and reaffirmed that, after confirming that Liu had not received them, he immediately destroyed all copies.

Catherine Liu stated in her declaration that, sometime after her brother consulted her about his termination in mid-November 2011, she became "generally aware" he had acquired copies of Loewen's employment agreement, the PPDG partnership agreement, and emails between Trask, Kamins, and Boyd on the subject of his termination and request to buy into the partnership, but she did not see these documents and was not aware the emails included correspondence with Sloan. She noted that at no time did her brother discuss the substance of the emails in detail with her, other than to indicate they concerned his termination and "rejection of his buy-in agreement." Catherine stated that, prior to the meeting in which her brother gave Price the box of 700 documents, she "flipped through" the documents, saw they included, among other things, various emails, but did not review any of the emails in detail, and did not retain copies of any of the documents. She stated Price later advised her of his discovery of "what appeared to be a limited number of email communications between [Sloan] and members of PPDG," and indicated to her that he was segregating them. Catherine Liu denied ever seeing, much less reviewing or using, the segregated documents.

In a reply declaration, Sloan repeated that on August 23, 2013 Price returned to him 33 of his attorney-client email communications with PPDG, that these totaled 105 pages, and that virtually all of the emails addressed "the very issues that are the subject of this litigation." Sloan attached 105 pages of what he claimed were redacted copies of these emails, all from 2011, which included the following subject lines and dates: "Partnership Agreement and Associate (employee) dentists option to buy in" (November 9) ; "Fwd: Our discussion yesterday - Re: Dr. Liu" (November 20); "Re: Our discussion yesterday (Re: Dr. Liu #2 - NOT SENT TO HIM)" (November 20) ; "Dr. Liu"

9

(November 25); "RE: Proposed termination notice to Dr. Liu ??" (November 28) ; "Dr. Liu termination ltr per employee agreement" (November 29) ; "November 29 meeting with Dr. Liu" (November 30) ; "RE: PacPal Dentistry RE: Dir. [*sic*] Liu's calculation of buy-in" (November 30) ; "Competition Issues" (November 30) , "RE: Liu's absence" (December 1) ; "RE: severance" dated (December 5) ; "Peter Sloan legal fees" (December 6) ; and "Employment Agreement" (December 6).

Several of these emails contained a signature block from "Peter Sloan  [¶]  Law Offices of Peter Sloan."  Some of them included the language, "The information contained in this email message is privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited."

D.     *The Hearing on the PPDG Defendants' Motion for Terminating Sanctions*

At the January 16, 2014 hearing on the PPDG defendants' motion, the court identified two significant factual issues on which the parties presented conflicting evidence: (a) the number of purportedly privileged attorney-client emails, and (b) the circumstances under which Liu acquired the emails, in particular whether Boyd's email program was password-protected and how she stored the emails.  The court set the matter for an evidentiary hearing, at which Liu and Boyd would testify.

The evidentiary hearing began on January 24, 2014 and continued on four other days.  Price conceded at the outset that, because he did not examine or inventory the purportedly privileged emails he returned to Sloan on August 23, 2013, he could not dispute Sloan's representation that those documents consisted of 105 pages.  Before testimony began, the trial court ordered that "the examinations . . . be focused on the issues presented by this motion.  In other words, we're not getting into the underlying dispute concerning what Dr. Liu was promised by Dr. Trask as far as a partnership or anything like that."

Boyd testified there were 17 computers at PPDG's office, most of which shared the same password, but her computer was protected by a unique password during the

10

entire time Liu worked there. She explained that other PPDG employees were not allowed to use her computer because she maintained confidential financial and employee information on her local hard drive. She stated that her hard drive and email program were accessible only by using her unique password, and she never shared that password with Liu or allowed him to use her computer. She testified that her routine was to log off her computer each afternoon when she left work, so that her hard drive and email program would not be accessible until she re-entered her password, although she admitted she may have "missed a day" from time to time.

Boyd also testified that, during the time Liu worked at PPDG, her email program automatically routed all incoming emails from Sloan or his secretary to a folder marked "Attorneys," so that these emails bypassed her general inbox. In the same way, her computer automatically routed incoming emails from Trask or Kamins to folders labeled with their names. Any emails she sent to anyone else were automatically stored in a "sent" folder. Thus, according to Boyd, in November and December 2011 all of the 33 privileged emails were located in one of these separately labeled folders, and none was in her general inbox.

Liu testified at the hearing that, although he stated during his deposition that he printed documents from Boyd's computer on two occasions, "in retrospect, it was three times." The first occurred on November 29, 2011, after his meeting with Trask, Kamins, and Boyd to discuss his request to buy into the partnership. According to Liu, this was the occasion on which he used Boyd's computer to clear a printer error, "accidentally" accessed Boyd's email program, and printed the "vast majority" of the emails. Liu admitted that he read these emails closely enough to know they contained advice to Trask and Kamins regarding his termination and his request to buy into the partnership, and that the emails contradicted what Trask and Kamins were telling him in their discussions with him. Liu's testimony was equivocal on whether, at this time, he knew Sloan was PPDG's lawyer: after stating he was "not sure" if he knew Sloan was PPDG's lawyer, he admitted he may have had an "inkling" Sloan was a lawyer, and then stated he "knew" Sloan was a lawyer but did not know he performed services for PPDG.

11

The second session of Liu's email printing from Boyd's computer occurred "a day or two after" November 29, 2011, by which time Liu "had an idea" Sloan was an attorney for PPDG. As he had on November 29, 2011, Liu printed these emails in the evening, after he finished seeing patients.

Liu printed emails from Boyd's computer a third time on December 8, 2011. Although the PPDG defendants had told him on December 2, 2011 that he no longer worked at PPDG, he believed Trask and Kamins still intended to give him a figure for buying into the partnership. For this reason, Liu explained, he came to the office during business hours on December 8 "to kind of see what was going on" and "to get more financial information" regarding the partnership. He stated that Trask, Kamins, and Boyd were not in the office, and that he used Boyd's computer to access the financial information he wanted "because it was more convenient, but I also wanted to see what other updated emails there were regarding myself and this whole buy-in situation." When pressed by the trial court, Liu admitted he used Boyd's computer because it had "email concerning [his] termination," and that his purpose in accessing and printing emails from Boyd's account was to collect evidence relating to his claim that he had a right to buy into the partnership. The emails he printed included communications between Boyd and Sloan concerning Liu's employment dispute. Liu testified that he did not recall Boyd's email program had any separate folders, labeled "Attorneys" or otherwise, but knew he printed emails only from her inbox.

Liu stated during his testimony that his memory of the events at issue was "a little fuzzy" and "a little spotty." The trial court admonished him several times for being "evasive," going off on "tangents," "wander[ing]," and refusing to answer questions asked by the court and counsel. For example, at one point during the hearing, the trial court stated: "You're choosing the words, and when I press you on it, then you change, and you have been doing this throughout your testimony. When somebody presses you on something then you change your testimony." At another point, the court stated it was

"forming an adverse credibility determination" against Liu.[5] The evidentiary hearing concluded on February 4, 2014, with the court hearing argument from counsel. The court took the matter under submission.

### E. *Liu's Request for Dismissal of His Contract Claims Without Prejudice*

On February 20, 2014, before the court issued its ruling on the PPDG defendants' motion for terminating sanctions, Liu lodged with the court clerk a request to dismiss without prejudice his causes of action for breach of contract (lost wages), breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and wrongful dissociation, and breach of implied-in-fact contract. On February 25, 2014 the clerk entered the dismissal.

Two days later, the PPDG defendants filed an ex parte application for an order instructing the clerk "not to file Plaintiff's Request for Dismissal Without Prejudice, or in the alternative, to require Plaintiff to file a Dismissal With Prejudice." The PPDG defendants argued that the trial court should not allow Liu to dismiss any claims without prejudice because he attempted to do so after "the commencement of trial," in violation of Code of Civil Procedure section 581, subdivision (c),[6] and because his request was a "tactical ploy" to "eviscerate" the evidentiary hearings the court had conducted.

The trial court construed the PPDG defendants' application as a motion to set aside Liu's dismissal, set a briefing schedule for filing opposition and reply papers, and

---

[5] On February 3, 2014, the fourth day of the evidentiary hearing, Liu filed a statement to disqualify Judge Robert Hess for cause, contending, among other things, that Judge Hess had determined that Liu was not credible before the parties had presented all of their evidence. The trial court struck the statement of disqualification.

[6] Code of Civil Procedure section 581, subdivision (c), provides: "A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial." Undesignated statutory references are to the Code of Civil Procedure.

13

set the matter for hearing on March 27, 2014. After hearing argument on March 27, the trial court took the matter under submission.

F. *The Trial Court's "Tentative Decision After Bench Trial"*

On April 22, 2014 the trial court issued a nearly 40-page "Tentative Decision After Bench Trial" on the PPDG defendants' motion for terminating sanctions. By issuing a "tentative decision," the trial court followed the procedure for issuing a statement of decision after a court trial, as provided in section 632 and California Rules of Court, rule 3.1590, even though an order on a motion generally does not require a statement of decision (see *Lien v. Lucky United Properties Inv., Inc.* (2008) 163 Cal.App.4th 620, 623-624 ["[t]he requirement of a written statement of decision generally does not apply to an order on a motion, even if the motion involves an evidentiary hearing and even if the order is appealable"]), and even though the PPDG defendants did not request a statement of decision.

The trial court found that, beginning at least on November 29, 2011, and on two occasions thereafter, Liu printed and read numerous attorney-client communications between PPDG and Sloan from Boyd's computer, that Liu knew at the time these were attorney-client communications, and that he selected them precisely because they disclosed the PPDG defendants' discussions with their attorneys. The court stated it did not believe Liu accessed Boyd's email program by accident, and found that Liu had to open folders, including one labeled "Attorney," in order to access the emails. The court found that Liu's purpose in going to PPDG's office on December 8, 2011 was to print additional emails from Boyd's computer and that his other stated reasons were merely excuses he intended to offer in the event that Trask, Kamins, or Boyd saw him and questioned his presence. The court also found that, although Liu's explanation for much of his conduct was that he expected to buy into PPDG as a partner, he "neither reasonably could have had, nor actually had, any such expectation after the events of the morning of December 2nd," and his professed expectation was an "after-the-fact attempt at self-justification for his actions."

14

The court further determined that, after Liu printed the emails from Boyd's computer, he took them home and read them "to understand what was going on, and because he was trying to collect evidence. Having gone to the trouble to purloin these materials, and recognizing that these were attorney-client communications, the Court believes it is a wholly reasonable inference that Dr. Liu read these documents carefully and with great attention. . . . It is not unlikely that he read them repeatedly." The court inferred from the circumstances of Liu's discussions with his sister and with Price, and from Liu's insistence that he did not appreciate the confidential nature of the emails, that Liu "fully discussed" the content of the emails with his attorneys.

In recounting Liu's testimony, the court noted numerous inconsistencies, and expressed its disbelief of Liu's account of events. The court also identified a number of other considerations that undermined Liu's credibility, including his refusal to respond to questions, his tendency to argue with opposing counsel, the number of times counsel for the PPDG defendants impeached his testimony at the hearing with his prior deposition testimony, and the changes he made in his testimony on several subjects during the hearing. The court stated it was "fully persuaded, well beyond a preponderance of the evidence, that Dr. Liu, knowingly and deliberately, repeatedly testified falsely to material matters while under oath during the evidentiary hearing. The Court is not persuaded that, even today, Dr. Liu has fully disclosed the number of occasions on which he accessed Ms. Boyd's computer, nor has he been fully forthcoming concerning the spectrum of materials he took. The Court finds that his purported reasons for believing what he did was proper had no reasonable objective basis, that he did not in fact believe those reasons at the time he accessed and copied the materials, and that each of the purported reasons is an after-the-fact rationalization. [¶] . . . . The Court is persuaded that Dr. Liu knew his acts were wrong at the time he did them, but committed the acts in a deliberate attempt to secure personal advantage. Dr. Liu's conduct was reprehensible on every level."

Turning to the question of appropriate sanctions, the court cited *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736 (*Slesinger*) for the proposition that, "when the plaintiff has engaged in misconduct during the course of the litigation that is

15

deliberate, that is egregious, and that renders any remedy short of dismissal inadequate to preserve the fairness of the trial, the trial court has the inherent power to dismiss the action." (*Id.* at p. 764.) The court found that Liu's conduct in accessing, printing, and reviewing the emails was both deliberate and egregious, and that his false testimony during the evidentiary hearing was "a significantly aggravating factor." As for the appropriate remedy, the court concluded that "[c]onsidering the documents in their totality, it appears that Dr. Liu gained access to substantially all the e-mail communications between PPDG and its attorneys relating to the period involving discussions of Dr. Liu's status, proposed buy-in, and termination," and that "[n]othing can erase Dr. Liu's knowledge of the content of the privileged documents from his mind." The court recognized "the possibility that not all of Dr. Liu's claims have 'benefitted' equally from his misconduct." Nevertheless, the court was persuaded that Liu's misconduct was "repeated, egregious, and without either any reasonable basis for believing it was proper or an actual belief that it was proper," and that he "repeatedly and deliberately testified falsely concerning his activities." Consequently, the court ruled that "the only appropriate response is terminating sanctions as to his entire action."

The court's tentative ruling was therefore to dismiss Liu's action with prejudice. The tentative decision also provided that, "[i]n order to make the terminating sanctions effective against the possible assertion that dismissal of [Liu's contract] claims prior to issuance of this decision somehow deprived the Court of jurisdiction over the dismissed claims, Dr. Liu is hereby permanently enjoined from commencing or prosecuting any claims against any of these defendants arising from or relating to either the circumstance or terms of Dr. Liu's former employment with PPDG, or the ending of that relationship." The tentative decision further provided that Liu's counsel would be disqualified from representing him further in any matter relating to any of the PPDG defendants.

Pursuant to California Rules of Court, rule 3.1590(c)(4), applicable to statements of decision after a court trial, the court's tentative decision provided that it would become the trial court's statement of decision unless within 10 days any party requested a statement of decision in compliance with Code of Civil Procedure section 632 and

16

California Rules of Court, rule 3.1590. Liu filed a request for a statement of decision. The court concluded that the evidentiary hearing that began on January 24, 2014 came within the meaning of a "trial" under Code of Civil Procedure section 581, subdivision (c), and that, because Liu had not requested dismissal before the "commencement of trial," his dismissal was untimely. The trial court therefore vacated the dismissal entered by the clerk on February 25.

The trial court also issued a "Statement of Decision After Bench Trial" on the PPDG defendants' motion for terminating sanctions, which did not differ materially from the court's tentative decision. The trial court entered judgment on June 10, 2014, and Liu timely appealed.

H.    *The PPDG Defendants' Motion for Attorneys' Fees*

On July 31, 2014 the PPDG defendants moved for an award of attorneys' fees and costs as prevailing parties, pursuant to the attorneys' fees provision in Liu's employment agreement,[7] Civil Code section 1717, and Code of Civil Procedure section 1032. The trial court granted the motion and filed an amended judgment on November 4, 2014, awarding the PPDG defendants $250,695.50 in attorneys' fees and $12,349.25 in costs. Liu timely appealed.

---

[7]    The agreement provided: "In the event of any litigation between the parties to enforce any provision of this Agreement or to protect or establish any right or remedy of any party hereunder, the substantially prevailing party shall be entitled to an award of all legal fees and costs of proceedings, including but not limited to reasonable attorneys' fees, fees owed to arbitrators, witness fees and expenses and accounting fees incurred by such prevailing party in connection with such dispute."

17

A.      *The Trial Court Erred by Vacating Liu's Dismissal of His Contract Claims Without Prejudice*

Liu argues that the trial court erred when it vacated the dismissal without prejudice of his causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and wrongful dissociation, and breach of implied-in-fact contract.  He contends the trial court incorrectly determined that his request to dismiss those claims was untimely under Code of Civil Procedure section 581.

"Code of Civil Procedure section 581 allows a plaintiff to voluntarily dismiss, with or without prejudice, all or any part of an action before the 'actual commencement of trial.'" (*Gogri v. Jack In The Box Inc.* (2008) 166 Cal.App.4th 255, 261 (*Gogri*), fn. omitted; see § 581, subds. (b)(1), (c).)[8]  "Apart from certain . . . statutory exceptions, a plaintiff's right to a voluntary dismissal [before commencement of trial pursuant to section 581] appears to be absolute.  [Citation.]  Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action." (*Gogri*, at p. 261; accord, *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784; see *S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 380 ["[a] section 581 dismissal 'is available to [a] plaintiff as a matter of right and is accomplished by filing with the clerk a written request therefor,'" and "'[i]f in proper form, the dismissal is effective immediately'"].)

---

[8]     Code of Civil Procedure section 581, subdivision (b), provides in relevant part: "An action may be dismissed in any of the following instances: [¶] (1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial, upon payment of the costs, if any."  Section 581, subdivision (c), provides:  "A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."

Code of Civil Procedure section 581, subdivision (a)(6), provides: "A trial shall be deemed to actually commence at the beginning of the opening statement or argument of any party or his or her counsel, or if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence." The California Supreme Court "has construed the phrase 'commencement of trial' in section 581 to include 'determinations on matters of law which dispose of the entire case, such as some demurrers and pretrial motions. [Citations.]' [Citation.] Therefore, 'commencement of trial' under section 581 is not restricted to only jury or court trials on the merits, but also includes pretrial procedures that effectively dispose of the case." (*Gogri*, *supra*, 166 Cal.App.4th at pp. 261-262, italics omitted; see *Wells v. Marina City Properties, Inc.*, *supra*, 29 Cal.3d at p. 785; *Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765, 769 ["[a] plaintiff is precluded from voluntarily dismissing an action without prejudice under various circumstances short of a full trial," including "a general demurrer sustained without leave to amend, a general demurrer sustained with leave to amend where no amendment is made within the allotted time, and where all issues have been deemed admitted in defendant's favor"].) "Because the trial court's application of section 581 to undisputed facts is a question of law, we apply the independent standard in reviewing on appeal the trial court's determination." (*Gogri*, at p. 262; accord, *Lee v. Kwong* (2011) 193 Cal.App.4th 1275, 1281.)[9]

The trial court concluded that Liu's request for dismissal was untimely under section 581 because Liu filed it a month after the court began the evidentiary hearing to resolve the factual questions raised by the PPDG defendants' motion for terminating

---

[9] There are two cases suggesting that "[w]hen a court considers the 'facts and circumstances' of a voluntary dismissal to evaluate 'whether allowing the dismissal to stand would be unfair or would endorse dishonest litigation tactics,' its conclusion is reviewed for an abuse of discretion." (*Mesa Shopping Center-East, LLC v. Hill* (2014) 232 Cal.App.4th 890, 899-900; see *Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544.) Here, however, the trial court did not engage in such an evaluation. Rather, the court determined, based on the undisputed procedural facts of the case, that trial "commenced on January 24, 2014, when the first witness was sworn."

sanctions. The court determined that, for purposes of applying section 581, trial commenced on January 24, 2014, when the first witness was sworn in at the hearing. Nominally consistent with this determination, the trial court styled its tentative decision and statement of decision on the PPDG defendants' motion for terminating sanctions as decisions issued "After Bench Trial."

1. *The Doctrines of Judicial Estoppel and Invited Error Do Not Preclude Liu from Challenging the Trial Court's Order Vacating the Dismissal of His Contract Claims*

As a preliminary matter, and contrary to the PPDG defendants' contentions, the doctrines of judicial estoppel and invited error do not bar Liu from arguing that the hearing on the PPDG defendants' motion for terminating sanctions was not a "trial" under section 581. The PPDG defendants argue these doctrines apply because Liu filed a request for a statement of decision pursuant to section 632 and California Rules of Court, rules 3.1590 and 3.1591, and these provisions "apply *only* where a trial has occurred."

""""Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. . . .'" The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987; accord, *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187-188; see *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 449 [judicial estoppel is "an extraordinary and equitable remedy that . . . must be 'applied with caution and limited to egregious circumstances' [citations], that is, ""when a party's inconsistent behavior will otherwise result in a miscarriage of justice"""].)

Judicial estoppel has no application here. When Liu requested a statement of decision, he did not take a position "totally inconsistent" with his current assertion that

20

the evidentiary hearing was not a "trial." (*Aguilar v. Lerner*, *supra*, 32 Cal.4th. at p. 986.) In his request for a statement of decision, Liu stated that he did "not acknowledge or concede" that the evidentiary hearings constituted a "bench trial" "on the merits," and he was not "waiv[ing] any right . . . to object to any such characterization." In addition, the trial court did not adopt an assertion by Liu that the evidentiary hearing was a bench trial. To the contrary, the court took that position, and Liu responded.

Nor does the doctrine of invited error apply. "'"Under the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal. [Citations.] Similarly an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal."'" (*Reilly v. Inquest Technology, Inc.* (2013) 218 Cal.App.4th 536, 552, italics omitted; accord, *Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 181.) Nothing in the record suggests that Liu's request for a statement of decision induced the trial court to determine that the evidentiary hearing constituted a "trial" under section 581. Rather, it appears the opposite occurred: the court decided that the hearing on the PPDG defendants' motion was a court trial and induced Liu to ask for a statement of decision. Moreover, because Liu objected, both in his opposition to the PPDG defendants' ex parte application to set aside his dismissal and in his request for a statement of decision, to the trial court's characterization of the hearing as a court trial, Liu did not expressly or impliedly agree to the trial court's procedure.

2.  *The Trial Court Erred in Vacating Liu's Dismissal of His Contract Claims*

On the merits, the trial court's order vacating the dismissal of Liu's contract claims was erroneous. Whatever the trial court may have meant to suggest by styling its tentative decision and statement of decision as decisions "After Bench Trial," the evidentiary hearing on the PPDG defendants' motion for terminating sanctions was not a trial on the merits of Liu's claims. Throughout the proceeding, the trial court only referred to it as an "evidentiary hearing," and made clear that the purpose of the hearing

21

was to help resolve factual issues raised by the PPDG defendants' allegation that Liu obtained and reviewed privileged attorney-client communications. Indeed, during the hearing the court emphasized that it was *not* conducting a trial on the merits by insisting that the court did not want to "get into the merits" of Liu's claims against the PPDG defendants.

Essentially conceding that the hearing on the motion for terminating sanctions "did not adjudicate the merits of the parties' dispute," the PPDG defendants argue that the proceeding nevertheless qualified as a case-dispositive pretrial procedure that terminated Liu's right to dismiss his claims under section 581. Although there are some situations, short of the commencement of trial, where the filing of a request for dismissal is untimely and ineffective, what happened in this case is not one of them.

"[A] substantial and fairly complex body of case law has grown up involving when—and when not—a plaintiff's statutory right to dismiss pursuant to [section 581] is cut off by the presence of some impending 'dispositive' procedure." (*Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 194 (*Franklin*).) The court in *Franklin* reviewed numerous cases examining the timeliness of a voluntary dismissal under section 581 and distilled the following test: a voluntary dismissal is ineffective under section 581 "[w]hen the dismissal could be said to have been taken (a) in the light of a public and formal indication by the trial court of the legal merits of the case, or (b) in the light of some procedural dereliction by the dismissing plaintiff that made dismissal otherwise *inevitable.*" (*Franklin*, at p. 200; see *ibid.* ["[t]he cases we have reviewed . . . suggest this test as the accepted judicial gloss on the voluntary dismissal statute"].)[10] Category (a)

---

[10] The *Franklin* court noted one outlier among the many cases it reviewed, *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168 (*Hartbrodt*). In *Hartbrodt* the defendant filed a motion for terminating sanctions after the plaintiff violated a discovery order. (*Id.* at pp. 171-172.) "[J]ust prior" to the hearing on the motion, the plaintiff filed a request for dismissal of his complaint without prejudice. (*Id.* at p. 172.) The trial court rejected that request, and the Court of Appeal affirmed: "In one last effort to salvage his case, appellant attempted to voluntarily dismiss his case without prejudice and thereby deny to respondents the finality obtained by imposition of the terminating sanction. This tactic

22

includes the court's issuance of a tentative ruling on a dispositive motion, and category (b) includes a plaintiff's failure to oppose a dispositive motion.  (See *id.* at p. 199.) Courts have regularly adopted and applied this test, often referring to it as the "mere formality" test.[11]  (See, e.g., *Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 633; *Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp.* (2009) 174 Cal.App.4th 67, 76-80; *Gogri, supra*, 166 Cal.App.4th at pp. 262-273.)

At the time Liu filed his request for dismissal of his contract-related claims without prejudice, the trial court had given no public, formal indication of the legal merits of the case, and there was no procedural dereliction by Liu that made dismissal of his case inevitable.  The trial court issued its tentative decision on the PPDG defendants' motion for terminating sanctions almost two months after Liu dismissed his contract claims.  And, while the trial court did express some skepticism of Liu's testimony and his attorneys' arguments at the evidentiary hearing, the court gave no formal indication of

---

would simply defeat the trial court's power to enforce its discovery orders." (*Id.* at p. 175.)  As the court in *Franklin* court observed in distinguishing *Hartbrodt*:  "*Hartbrodt* thus would appear to be based on the essential equities of the situation rather than a precise ascertainment of when the statutory cutoff right ends.  While we agree that looking to the equities is good judicial policy, we are mindful that any consideration of when the statutory right to voluntary dismissal terminates must be rationally connected to the statutory phrase 'commencement of trial.'  We must therefore respectfully . . . part company with *Hartbrodt* to the degree that it might be read to stand for the idea that equities *alone* can justify the termination of the statutory right." (*Franklin, supra*, 148 Cal.App.4th at p. 207.)

[11]     The court in *Franklin* stated its test was "basically the one proposed" by the court in *Zapanta v. Universal Care, Inc.* (2003) 107 Cal.App.4th 1167 (*Zapanta*), "which employed the more elegant shorthand, 'mere formality.'" (*Franklin, supra*, 148 Cal.App.4th at pp. 201-202.)  In *Zapanta* the plaintiffs filed a request for dismissal without prejudice one day before their opposition to the defendants' motion for summary judgment was due. (*Zapanta*, at p. 1169.)  The court in *Zapanta* determined that the plaintiffs' request was timely under section 581 because, at the time they filed it, "the opposition to the summary judgment motion was not past due, no hearing on the motion had been held and no tentative ruling or other decision tantamount to an adjudication had been made in [the defendants'] favor.  In other words, the case had not yet reached a stage where a final disposition was a mere formality." (*Id.* at pp. 1173-1174.)

how it intended to rule on the motion. At the end of the hearing, the court took the matter under submission, and at that time there were several possible adverse outcomes on the motion that did not include dismissal of the action, such as disqualification of counsel or orders imposing issue or evidence sanctions. Thus, even assuming Liu may have been able to discern that the trial court was inclined to grant the motion for terminating sanctions, a ruling to that effect was not a "mere formality" at the time Liu filed his request for dismissal. (See *Franklin*, *supra*, 148 Cal.App.4th at pp. 201-202; *Zapanta*, *supra*, 107 Cal.App.4th at p. 1174.) Liu may have thought he was going to lose his contract claims and face the possibility of attorneys' fees. But section 581 allowed Liu to dismiss his contract claims when he did. (See *Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp.*, *supra*, 174 Cal.App.4th at p. 78 ["a plaintiff's subjective lack of good faith in seeking a dismissal does not, by itself, terminate the statutory right to dismiss"].) The trial court erred in vacating Liu's dismissal without prejudice of his contract-related claims.

B. *The Trial Court Erred in Granting Terminating Sanctions on Liu's Labor Code Claims, but Did Not Err in Granting Terminating Sanctions on His Other Non-Contract Claims*

"In the absence of express statutory authority, a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice." (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 915; accord, *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 748-749.) In particular, "when the plaintiff has engaged in misconduct during the course of the litigation that is deliberate, that is egregious, and that renders any remedy short of dismissal inadequate to preserve the fairness of the trial, the trial court has the inherent power to dismiss the action." (*Slesinger, supra*, 155 Cal.App.4th at p. 764; see *Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51 (*Osborne*) ["California courts possess inherent power to issue a terminating sanction for 'pervasive misconduct'"].) "The decision whether to exercise the inherent power to dismiss requires consideration of all relevant circumstances, including the nature of the

24

misconduct (which must be deliberate and egregious, but may or may not violate a prior court order), the strong preference for adjudicating claims on the merits, the integrity of the court as an institution of justice, the effect of the misconduct on a fair resolution of the case, and the availability of other sanctions to cure the harm." (*Slesinger*, at p. 764.) "[T]here are two important inquiries to be made by trial courts when determining whether a plaintiff's actions warrant a dismissal with prejudice. First, the court must discern whether the plaintiff's pattern of conduct was so 'severe [and] deliberate' as to constitute extreme circumstances. [Citation.] Second, the court must look to see whether alternatives less severe than dismissal are available. The '"sound exercise of discretion requires the judge to consider and use lesser sanctions"' unless the court's authority cannot possibly be otherwise vindicated." (*Lyons v. Wickhorst*, at p. 917.)

We review a trial court's exercise of its inherent power to impose terminating sanctions for abuse of discretion. (*Slesinger*, *supra*, 155 Cal.App.4th at p. 765; see *Osborne*, *supra*, 247 Cal.App.4th at p. 51.) In doing so, we view the record in the light most favorable to the court's ruling, draw all reasonable inferences in support of the ruling, and defer to the trial court's credibility determinations. (*Slesinger*, at p. 765; accord, *Osborne*, at p. 51.) "We accept the trial court's factual determinations concerning misconduct if they are supported by substantial evidence." (*Osborne*, at p. 51.)

Liu first contends the trial court erred in exercising its inherent power to dismiss his action because his misconduct did not qualify as "egregious." In support of this contention, he argues that he did not obtain PPDG's attorney-client emails illegally, was honest in admitting how he obtained them, returned them shortly after litigation commenced, never used them, and had no meaningful recollection of their contents.

The trial court did not abuse its discretion in concluding that Liu's conduct was egregious. Regardless of whether Liu violated the law, the court found that when he obtained emails from Boyd's computer on December 8, 2011 he did not have legitimate access to any of PPDG's computers and did not believe he did; that on other occasions he used Boyd's computer to obtain documents to which he did not have legitimate access

25

and did not believe he did; that he knew at the time he printed and reviewed the emails they were PPDG's privileged attorney-client communications; and that he retained knowledge of their contents. The court also found that Liu repeatedly testified falsely concerning the scope of his misconduct. Although Liu disagrees with this version of events, he does not suggest the court's findings were unsupported by substantial evidence.

The trial court also did not abuse its discretion in determining that disqualification of counsel was not an adequate remedy for Liu's misconduct. As the trial court noted, nothing could erase Liu's knowledge of the content of the emails, and replacing counsel would not solve the problem. Liu is incorrect in suggesting the court "had no idea" what he learned from reading the emails because the PPDG defendants did not supply a privilege log or other general summary of the content of the email. The subject lines and dates of the redacted copies of the emails the PPDG defendants provided to the court were, as the court found, "tantamount to a privilege log." In his declaration in support of the motion for terminating sanctions, Sloan also stated that the emails concerned PPDG's "considerations, legal and factual, as to virtually all of the claims set forth in this action." And the fact that Liu printed and retained the emails in what he admitted was an effort to find "any information or data that would help explain why [PPDG] suddenly terminated [him] for no good reason" suggests the emails contained information relevant to his claims against PPDG.

We agree with Liu, however, that the trial court's dismissal of his entire action was overbroad, and that the court should not have dismissed his statutory claims under the Labor Code. Labor Code sections 201 and 203 express "'a fundamental public policy of this state'" in favor of "[f]ull and prompt payment of wages due an employee." (*Davis v. Farmers Insurance Exchange* (2016) 245 Cal.App.4th 1302, 1331; see *ibid.* ["[t]he wages an employer owes its employees are accorded 'a special status' under California law"].) Courts should use extra caution in exercising discretion to dismiss such claims for litigation-related misconduct. Moreover, because Liu's claims under those statutes turn principally on the straightforward questions of whether and when PPDG paid him

26

for the days he worked,[12] his knowledge of the content of the emails would not necessarily render a trial on those claims unfair.  (See *Mamika v. Barca* (1998) 68 Cal.App.4th 487, 493 ["the critical computation required by section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"]; *Norris-Wilson v. Delta-T Group, Inc.* (S.D.Cal. 2010) 270 F.R.D. 596, 611 [plaintiffs' claim under Labor Code section 201 "won't require anything other than basic computation to determine if they're entitled to damages for not being paid on time once their employment ended"].)  Therefore, although the trial court did not abuse its discretion in granting terminating sanctions on Liu's other non-contract claims (i.e., quantum meruit and fraud and deceit), the court did abuse its discretion in imposing the ultimate sanction of dismissal on Liu's causes of action under Labor Code sections 201 and 203.[13]

C.     *The Trial Court Erred in Enjoining Future Claims by Liu Against the PPDG Defendants*

Citing no authority other than its discretion to issue terminating sanctions under *Slesinger*, the trial court stated in its ruling:  "The Court is aware that since the [motion for terminating sanctions] was submitted Dr. Liu has purported to dismiss certain of the claims in his Complaint without prejudice. . . .  The Court has this date granted defendants' motion to vacate that dismissal without prejudice.  However, the Court is persuaded additional steps are necessary in order to make the terminating sanctions

---

[12]     Labor Code section 201 "provides that if an employer 'discharges' an employee, wages earned and unpaid at the time of discharge are due and payable immediately. Under [Labor Code] section 203, an employer's willful failure to pay wages to a 'discharged' employee in accordance with [Labor Code] section 201 subjects the employer to penalties."  (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 80; see Lab. Code, §§ 201, 203.)

[13]     On remand, the trial court may consider the appropriateness of lesser sanctions on those claims.

effective against the possible assertion that dismissal of certain claims prior to issuance of this decision somehow deprived the Court of jurisdiction over those dismissed claims. In order to fully effectuate the Court's imposition of sanctions, Dr. Liu is hereby permanently enjoined from commencing or prosecuting *any* claims against any of these defendants arising from or relating to either the circumstance or terms of Dr. Liu's former employment with PPDG, or the ending of that relationship, and is further enjoined from assigning or otherwise transferring any of those claims."

The trial court abused its discretion in issuing this injunction. The court in *Slesinger* characterized the sanction of dismissal for litigation misconduct as "a drastic remedy to be employed only in the rarest of circumstances." (*Slesinger*, *supra*, 155 Cal.App.4th at p. 764, italics omitted.) The limited and extraordinary nature of the dismissal remedy recognized in *Slesinger* does not authorize the imposition of sanctions that go beyond dismissal of pending claims, such as enjoining the future filing of claims that were timely dismissed without prejudice from the pending action or enjoining the future filing of claims that were never even brought in the pending action. The trial court's injunction would do just that. Neither the trial court nor the PPDG defendants cite any authority suggesting that a court has discretionary power to impose such a sanction for litigation misconduct. (See *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 147 [trial court abuses its discretion when it acts in accord with a mistaken view of the scope of its discretion]; *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1361 ["'[a] trial court's decision that rests on an error of law is an abuse of discretion'"].)

Moreover, the PPDG defendants did not request an injunction in their motion for terminating sanctions or during the hearing on that motion. Rather, the trial court issued the injunction sua sponte, without giving notice to the parties that it was considering such an injunction or hearing argument on whether it was appropriate to do so. This, too, was an abuse of discretion because "[d]ue process mandates adequate notice and opportunity to be heard prior to the imposition of sanctions." (*Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, 70.) A trial court imposing sanctions "must keep in mind an

28

immutable principle that cuts across all areas of the law: sanctions may not be summarily imposed. Due process demands more." (*In re Marriage of Duris and Urbany* (2011) 193 Cal.App.4th 510, 511; see *Barrientos v. City of Los Angeles*, *supra*, 30 Cal.App.4th at p. 72 [trial court's imposition of monetary sanctions without prior notice or opportunity to be heard and for improper purpose was abuse of discretion].)

D.       *The Trial Court Erred in Awarding Attorneys' Fees to the PPDG Defendants*

Liu contends that the trial court erred in awarding attorneys' fees to the PPDG defendants based on the attorneys' fees provision in his employment contract because, among other reasons, he voluntarily dismissed his contract-related claims, and therefore the PPDG defendants were not prevailing parties. We review a trial court's award of attorneys' fees and costs, including its determination that a litigant is a prevailing party, for abuse of discretion, unless these issues involve interpreting a statute, in which case they present a question of law we review de novo. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; see *Almanor Lakeside Villas Owners Association v. Carson* (2016) 246 Cal.App.4th 761, 774.)

Civil Code section 1717, subdivision (a), authorizes the trial court to award reasonable attorneys' fees to the prevailing party in a contract action if the contract provides for such an award. (Civ. Code § 1717, subd. (a); *Eden Township Healthcare District v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 425.) Section 1717, subdivision (b)(2), however, provides that, "[w]here an action has been voluntarily dismissed . . . , there shall be no prevailing party for purposes of this section." (Civ. Code § 1717, subd. (b)(2); see *Mesa Shopping Center-East, LLC v. Hill* (2014) 232 Cal.App.4th 890, 902 ["'[w]here an action [on a contract] has been voluntarily dismissed . . . , there shall be no prevailing party for purposes of' recovering attorney fees"].) Thus, "[w]hen a plaintiff files a complaint containing causes of action within the scope of section 1717 (that is, causes of action sounding in contract and based on a contract containing an attorney fee provision), and the plaintiff thereafter voluntarily dismisses the

action, section 1717 bars the defendant from recovering attorney fees incurred in defending those causes of action, *even though the contract on its own terms authorizes recovery of those fees*." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 617; accord, *Mitchell Land and Imp. Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 485-486.)

Liu argues that, because the trial court erred in vacating the voluntary dismissal of his contract-related claims, his voluntary dismissal precluded an award of attorneys' fees to the PPDG defendants based on the attorneys' fees provision in his employment contract. Liu is correct. Civil Code section 1717, subdivision (b)(2), bars the PPDG defendants' claims for prevailing party attorneys' fees. The PPDG defendants' only response is to suggest that the trial court did not err in vacating Liu's dismissal, an argument we have rejected. Because Liu successfully dismissed his contract-related claims under section 581, the trial court erred in awarding attorneys' fees to the PPDG defendants. (See *Gogri*, *supra*, 166 Cal.App.4th at p. 274 [where trial court erred in vacating voluntary dismissal that was timely under section 581, "[t]he trial court had no authority to award [the defendant] Civil Code section 1717 attorney fees on [the plaintiff's] contract causes of action"]; *Mesa Shopping Center-East, LLC v. Hill*, *supra*, 232 Cal.App.4th at p. 902 [trial court has "no discretion to award fees" under Civil Code section 1717 where action on contract is voluntarily dismissed].)[14]

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions (1) to vacate the order granting the PPDG defendants' motion to vacate the dismissal of Liu's contract-related causes of action and to enter a new order denying that motion, (2) to vacate the order dismissing Liu's causes of action under Labor Code sections 201 and 203 and the order enjoining Liu from bringing any future claims against the PPDG defendants, and (3) to vacate the order granting the PPDG defendants' motion

---

[14] Liu does not challenge the trial court's award of costs to the PPDG defendants.

for attorneys' fees and to enter a new order denying that motion.  The trial court's order granting the PPDG defendants' motion for terminating sanctions on Liu's causes of action for quantum meruit and fraud and deceit is affirmed.  The parties are to bear their costs on appeal.


SEGAL, J.


We concur:



PERLUSS, P. J.



ZELON, J.

31